IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| **KENNETH R. CHRIST, JR.,** on Behalf of Himself and All Others Similarly Situated, *PLAINTIFFS* | CIVIL ACTION NUMBER: 98-210-CIV-FTM-24 |
| *VS.* | |
| **BENEFICIAL CORPORATION; BENEFICIAL MANAGEMENT CORPORATION OF AMERICA; BENEFICIAL FLORIDA, INC.; BENEFICIAL INSURANCE GROUP, INC.; BENEFICIAL INSURANCE AGENCY OF NEVADA; WESCO INSURANCE COMPANY; AMERICAN CENTENNIAL INSURANCE COMPANY; WILMINGTON PROPERTY AND CASUALTY INSURANCE COMPANY,** *DEFENDANTS* | CLASS ACTION AND DEMAND FOR JURY TRIAL |

## NATIONAL CLASS ACTION COMPLAINT

# INDEX

I. Jurisdiction and Venue

II. Parties

III. Introduction and Categories of Defendants

IV. Claims for Violation of the Truth-in-Lending Act (TILA)

Class Period

Narrative of Facts

**TILA COUNT ONE**
Defendant Creditors Only
("Non-Filing Insurance" is Not Insurance)

**TILA COUNT TWO**
Plead in the Alternative
Defendant Creditors Only
(Not "Non-Filing Insurance" Within the
Meaning of 15 U.S.C. § 1605(d)(2))

**TILA COUNT THREE**
Plead in the Alternative
Defendant Creditors Only
("Non-Filing Insurance" Used for Defaults and
Other Credit Losses)

V. Claims for Violation of the Racketeer Influenced
and Corrupt Organizations Act (RICO)

Relevant Times

Class Period

Parties and Participants

The Pattern of Racketeering Activity

Narrative of Facts

**RICO § 1962(c) COUNT ONE**
Violation of 18 U.S.C. § 1962(c)
All Defendants
(Insurance Companies as Defendants and Enterprises; "Non-Filing Insurance" Is Not Insurance or, In the Alternative, Not "Non-Filing Insurance" Within the Meaning of 15 U.S.C. § 1605(d)(2))

**RICO CONSPIRACY COUNT ONE**
Conspiracy to Violate 18 U.S.C. § 1962(c)
All Defendants
(Insurance Companies as Defendants and Enterprises; "Non-Filing Insurance" Is Not Insurance or, In the Alternative, Not "Non-Filing Insurance" Within the Meaning of 15 U.S.C. § 1605(d)(2))

**RICO § 1962(c) COUNT TWO**
Violation of 18 U.S.C. § 1962(c)
Plead in the Alternative
All Defendants
(Insurance Companies as Defendants and Enterprises; "Non-Filing Insurance" Used for Defaults and Other Credit Losses)

**RICO CONSPIRACY COUNT TWO**
Conspiracy to Violate 18 U.S.C. § 1962(c)
Plead in the Alternative
All Defendants

(Insurance Companies as Defendants and
Enterprises; "Non-Filing Insurance" Used for Defaults
and Other Credit Losses)

**RICO § 1962(c) COUNT THREE**
Violation of 18 U.S.C. § 1962(c)
Plead in the Alternative
Defendant Creditors Only
(Insurance Companies as Non-Defendant
Enterprises; "Non-Filing Insurance" Is Not Insurance or,
In the Alternative, Not "Non-Filing Insurance" Within the
Meaning of 15 U.S.C. § 1605(d)(2))

**RICO CONSPIRACY COUNT THREE**
Conspiracy to Violate 18 U.S.C. § 1962(c)
Plead in the Alternative
Defendant Creditors Only
(Insurance Companies as Non-Defendant
Enterprises; "Non-Filing Insurance" Is Not Insurance or,
In the Alternative, Not "Non-Filing Insurance" Within the
Meaning of 15 U.S.C. § 1605(d)(2))

**RICO § 1962(c) COUNT FOUR**
Violation of 18 U.S.C. § 1962(c)
Plead in the Alternative
Defendant Creditors Only
(Insurance Companies as Non-Defendant
Enterprises; "Non-Filing Insurance" Used for Defaults
and Other Credit Losses)

**RICO CONSPIRACY COUNT FOUR**
Conspiracy to Violate 18 U.S.C. § 1962(c)
Plead in the Alternative
Defendant Creditors Only

(Insurance Companies as Non-Defendant
Enterprises; "Non-Filing Insurance" Used for Defaults
and Other Credit Losses)

VI. Declaratory Judgment Act

**COUNT FIVE**
Additional Relief Under the Declaratory Judgment
Act, 28 U.S.C. §§ 2201 and 2202
Applicable to All Counts

VII. Plaintiff Class Allegations

Appendices to Complaint

## - I. -

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1337(a); 15 U.S.C. § 1640(e), and 18 U.S.C. §§ 1964(a), 1964(c).

2. Plaintiffs claims as alleged in this Complaint arise under the laws of the United States thus conferring subject-matter jurisdiction under 28 U.S.C. § 1331. In addition, plaintiffs' claims for violation of the Truth-in-Lending Act (TILA), 15 U.S.C. § 1601, et seq., are claims arising under an "Act of Congress regulating commerce," thus conferring subject-matter jurisdiction under 28 U.S.C. § 1337.

3. Plaintiffs, as private party litigants, bring claims herein for injunctive, declaratory and other equitable relief under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.* This Court, therefore, has subject-matter jurisdiction under 18 U.S.C. § 1964(a). Additionally, under their RICO claims, plaintiffs seek damages and invoke the Court's subject-matter jurisdiction under 18 U.S.C. § 1964(c).

4. The Court has personal jurisdiction of the defendants and venue is proper under 28 U.S.C. §§ 1391(b) and (c); 18 U.S.C. §§ 1965(a), (b), and (d), and

*Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935 (11th Cir. 1997). Alternatively, this Court has personal jurisdiction of the defendants under the provisions of the Florida "long-arm" service of process statutes and rules in accordance with Rule 4(k)(1)(A), Fed.R.Civ.P. Venue is proper under 28 U.S.C. §§ 1391(b) and (c), and 18 U.S.C. §§ 1965(a), (b) and (d).

**- II. -**

**PARTIES**

5. Plaintiff class representative Kenneth R. Christ, Jr., is over the age of twenty-one (21) years and is a resident of Cape Coral, Florida, in this judicial district. Mr. Christ brings this action on behalf of himself and a class of all other persons similarly situated.

6. Defendant Beneficial Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Delaware at 301North Walnut Street, Wilmington, Delaware 19801. Beneficial Corporation is the parent corporation of all the other defendants named in this action, and exercises dominion and control over the activities and operations of the other defendants. *See Clausen v. Beneficial Finance Company of Berkeley and Beneficial Corporation*, 423 F.Supp. 985 (N.D.

Cal. 1976). The other defendants in this action are and act as agents, instrumentalities, or alter egos of defendant Beneficial Corporation as to the matters alleged in this complaint and Beneficial Corporation is liable for the violations of law committed by its said agents, instrumentalities or alter egos.

7. Defendant Beneficial Management Corporation of America ("BMCA") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Delaware at 300 Beneficial Center, Wilmington, Delaware 19801. BMCA is a direct wholly-owned subsidiary of defendant Beneficial Corporation. Together with or independently of Beneficial Corporation, BMCA exercises dominion and control over the activities and operations of the other defendants. *See Clausen v. Beneficial Finance Company of Berkeley and Beneficial Corporation*, 423 F.Supp. 985 (N.D. Cal. 1976). The other defendants in this action are and act as agents, instrumentalities, or alter egos of BMCA as to the matters alleged in this complaint and BMCA is liable for the violations of law committed by its said agents, instrumentalities or alter egos.

8. Defendant Beneficial Florida, Inc. ("Beneficial Florida") is a corporation organized and existing under the laws of the State of Delaware with its

principal place of business in the State of Florida at 4951 Coconut Creek, Coconut Creek, Florida. Beneficial Florida is a wholly-owned local-operating subsidiary of defendant Beneficial Corporation and/or BMCA. Beneficial Florida conducts the consumer loan and finance affairs and business of its parents in the State of Florida. Beneficial Florida and all the similar local operating subsidiary companies of Beneficial Corporation and/or BMCA, through which the said parent corporations engage in the consumer loan and finance business and commit the violations of law herein alleged, which are located in virtually every state of the United States, are and act as agents, instrumentalities, or alter egos of Beneficial Corporation and/or BMCA as to the matters alleged in this complaint and Beneficial Corporation and/or BMCA are liable for the violations of law committed by its said agents, instrumentalities or alter egos. *See Clausen v. Beneficial Finance Company of Berkeley and Beneficial Corporation*, 423 F.Supp. 985 (N.D. Cal. 1976).

9. Defendant Beneficial Insurance Group, Inc. ("BIG") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Delaware at 301 North Walnut Street, Wilmington, Delaware 19801. BIG is a direct wholly-owned subsidiary of

defendant Beneficial Corporation. Together with or independently of Beneficial Corporation, BIG exercises dominion and control over the activities and operations of defendants Wesco Insurance Company, American Centennial Insurance Company and Wilmington Property and Casualty Insurance Company, all of which are wholly-owned subsidiaries of Beneficial Corporation, BMCA and/or BIG. In addition, BIG provides administrative and command and control services to the said insurance companies in connection with the "non-filing insurance" practices and procedures that form the basis of this action or was otherwise involved with the defendants said "non-filing insurance" program. BIG is and acts as the agent, instrumentality, or alter ego of its parent corporation or corporations as to the matters alleged in this complaint.

10. Defendant Beneficial Insurance Agency of Nevada ("BIAN") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Delaware at 301 North Walnut Street, Wilmington, Delaware 19801. BIAN is a direct wholly-owned subsidiary of defendant BIG. BIAN is an agent of BIG which administers the charges for "non-filing insurance" herein described or was otherwise involved with the defendants said "non-filing insurance" program. BIAN is and acts as the agent,

instrumentality, or alter ego of its parent corporation or corporations as to the matters alleged in this complaint.

11. Defendant Wesco Insurance Company ("Wesco") is a corporation organized and existing under the laws of the State of New Mexico with its principal place of business in the State of Delaware at 301 North Walnut Street, Wilmington, Delaware 19801. Wesco is a wholly-owned subsidiary of defendant Beneficial Corporation, BMCA and/or BIG. Wesco provided "non-filing insurance" to Beneficial Corporation, BMCA, BIG, BIAN and/or the local operating companies (e.g., Beneficial Florida) during all or part of the class period in this action, or was otherwise involved in the "non-filing insurance" program herein described.

12. Defendant American Centennial Insurance Company ("American Centennial") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Delaware at 1415 Foulkstone Road, Suite 100 (Foulkstone Plaza), Wilmington, Delaware 19803. American Centennial is or, during a part of the class period, was a wholly-owned subsidiary of defendant Beneficial Corporation, BMCA and/or BIG. American Centennial provided "non-filing insurance" to Beneficial Corporation, BMCA,

BIG, BIAN and/or the local operating companies (e.g., Beneficial Florida) during all or part of the class period in this action, or was otherwise involved in the "non-filing insurance" program herein described.

13. Defendant Wilmington Property and Casualty Insurance Company ("WPCIC") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of Delaware at 301 North Walnut Street, Wilmington, Delaware 19801. WPCIC is or, during a part of the class period, was a wholly-owned subsidiary of defendant Beneficial Corporation, BMCA and/or BIG. WPCIC provided "non-filing insurance" to Beneficial Corporation, BMCA, BIG, BIAN and/or the local operating companies (e.g., Beneficial Florida) during all or part of the class period in this action, or was otherwise involved in the "non-filing insurance" program herein described.

## - III. -

## INTRODUCTION AND CATEGORIES OF DEFENDANTS

14. This is a plaintiff class action arising out of the defendants' scheme to defraud plaintiff class members. As set forth more fully below, the defendants knowingly and intentionally engaged in a scheme to defraud hundreds of thousands of class members in the United States through charges for "non-filing

insurance." On behalf of the class as hereafter generally described, plaintiffs assert claims for violation of the Truth-in-Lending Act (TILA), 15 U.S.C. § 1601, *et seq.*, and Regulation Z (12 CFR § 226), and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*

15. As used in this complaint, the term "**creditor**," "**creditors**" or "**defendant creditors**" means defendants Beneficial Corporation, Beneficial Management Corporation of America and Beneficial Florida, Inc., and any other parent corporations, subsidiary corporations, affiliate corporations and sister corporations thereof, and assignors thereof.

16. As used in this complaint, the term "**insurance company**," "**insurance companies**" or "**defendant insurance companies**" means defendants Beneficial Insurance Group, Inc., Beneficial Insurance Agency of Nevada, Wesco Insurance Company, American Centennial Insurance Company and Wilmington Property and Casualty Insurance Company (except as to those RICO counts in which certain insurance companies are identified as non-defendant enterprises), and the parent corporations, subsidiary corporations, affiliate corporations and sister corporations thereof.

17. The class for TILA consists generally of all persons who, from the date the defendant creditors first began charging consumers for "non-filing insurance" in any state of the United States, entered into consumer loan or consumer sales finance transaction with a defendant creditor (including parents, subsidiaries and affiliates), or any assignor thereof, in the United States, and who, as part of that transaction, were charged for "non-filing insurance" and all persons who may in the future enter into such transactions. Plaintiffs allege that the named defendant creditors are liable for TILA violations regarding "non-filing insurance" in consumer finance contracts assigned to them by non-defendant merchants under and pursuant to the assignee liability provisions of TILA contained in 15 U.S.C. § 1641.

18. The class for RICO consists generally of all persons who entered into consumer loan or consumer sales finance transaction with a defendant creditor (including parents, subsidiaries and affiliates), or any assignor thereof, in the United States, on or after a date four (4) years preceding the filing of this Complaint, and who, as part of that transaction, were charged for "non-filing insurance" and all persons who may in the future enter into such transactions. Plaintiffs allege that the named defendants are liable for RICO violations

regarding "non-filing insurance" with regard to consumer finance contracts assigned to them by non-defendant merchants.

19. The named plaintiff class representative, Kenneth R. Christ, Jr., entered into a consumer loan or consumer sales finance transaction with Beneficial Florida, a local operating company and wholly-owed subsidiary company of Beneficial Corporation and/or BMCA which operates and exists under the dominion and control, and as the agent, instrumentality or alter ego of its parent corporations, on September 21, 1994, in Fort Myers, Florida, in which a $14.00 charge for "non-filing insurance" was made, and for which transaction alleged "non-filing insurance" was provided by at least one defendant insurance company.

20. The parent corporations, which are named as defendants in this action, are directly liable for the unlawful, wrongful and/or fraudulent activities of their subsidiary and affiliate corporations as alleged in this complaint and/or liable therefor under the doctrines of parental liability, alter ego, agency and instrumentality as to TILA and RICO, *United Steelworkers of America, AFL-CIO v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir. 1988), and as co-conspirators as to RICO.

21. The violations of RICO were accomplished by the defendants (including the parent, subsidiary, affiliate or sister corporations) as part of a nationwide conspiracy and combination of the said defendants, and other creditors and insurance companies which are not named as defendants. The aforesaid nationwide combination and conspiracy is "horizontal" between the different creditors and between the different insurance companies, and "vertical" between the creditors and the particular insurance company or insurance companies providing "non-filing insurance" to or otherwise involved in the "non-filing insurance" program of each particular creditor.

22. Additionally, the RICO "vertical" conspiracy consists of an "intracorporate conspiracy" between the parent corporations and their subsidiary and affiliate corporations (whether or not those subsidiary and affiliate corporations are named as defendants), by virtue of which the parent corporations, as co-conspirators, are liable for the fraudulent and wrongful activities of their subsidiary and affiliate corporations in connection with the "non-filing insurance" scheme herein described.

**- IV. -**

## CLAIMS FOR VIOLATION OF THE TRUTH-IN-LENDING ACT (TILA)

## CLASS PERIOD

23. The class period in this action for TILA commences on the date that the defendant creditors (including parents, subsidiaries and affiliates), directly or through a local operating subsidiary company, first began charging consumers for "non-filing insurance" in any state, or began accepting assignments of consumer sales finance contracts containing or on which the defendant creditors imposed a charge from "non-filing insurance", in the United States (*i.e.*, transactions which occurred both within one (1) year prior to the commencement of this action and more than one (1) year prior to the commencement of this action), and all persons who may in the future enter into such transactions.

24. As to those members of the class whose transactions occurred more than one (1) year prior to the commencement of this action, plaintiffs specifically and expressly plead and aver that the TILA violation herein alleged was a self-concealing violation and/or because of the manner in which the violation was

committed those plaintiffs were not and could not be aware of facts sufficient to put them on notice of the said violation until the commencement of this action against each respective defendant creditor. Plaintiffs specifically and expressly plead and aver that the statute of limitations for violation of TILA is equitably tolled as to the subject transactions which occurred more than one (1) year prior to the commencement of the action.

## NARRATIVE OF FACTS

25. Plaintiff Kenneth R. Christ, Jr., entered into a subject transaction with the Beneficial defendants on September 21, 1994. A copy of the documents relating to Mr. Christ's said transaction with the defendants is attached hereto as Appendix 1 and is expressly incorporated herein by reference.

## TILA COUNT ONE
### DEFENDANT CREDITORS ONLY

26. This TILA Count One is brought on behalf of the class against the defendant creditors only, to-wit: Beneficial Corporation, BMCA and Beneficial Florida.

27. At all times relevant to this complaint, the defendant creditors were and are engaged in the business of making consumer loans of money and of financing the consumer credit sale of goods.

28. The named plaintiff and each member of the class (hereafter collectively referred to as "plaintiffs") entered into a consumer loan or consumer sales finance transaction involving a uniform, written pre-printed contract with the defendant creditors (which term expressly includes all subsidiaries, affiliates and local operating subsidiary companies of the parent corporations) or the assignor thereof.

29. As part of the aforesaid transaction and pursuant to the terms of the said uniform, written, pre-printed contract, the defendant creditor imposed a charge on each plaintiff for "non-filing insurance" as part of the written itemization of the "amount financed" in each plaintiff's loan or consumer sales finance contract documents.

30. After imposing the aforesaid "non-filing insurance" charge on plaintiffs, the defendant creditor either retained or forwarded to a defendant insurance company all or part of the "non-filing insurance" fee charged to plaintiffs. The insurance company retained a percentage of the "non-filing insurance" fees so forwarded by the defendant creditor and, pursuant to a pre-arranged agreement between the defendant creditor and the insurance company, returned the majority of that money to the defendant creditor.

31. The so-called "non-filing insurance" at issue is not insurance.

32. The said charge for "non-filing insurance" was imposed on plaintiffs as part of the "amount financed," was not used to purchase insurance and, at the time the said charge was imposed on plaintiffs, the defendant creditors or their assignors and the insurance companies involved knew that the so-called "non-filing insurance" was not insurance and that the money charged to plaintiffs would not be used to purchase or provide insurance.

33. Instead of being used to purchase insurance, the charge was imposed as part of a nationwide scheme designed for the purpose of increasing the income and profits of the defendant creditors and the insurance companies involved at the direct expense of the plaintiffs.

34. The disclosure of the "non-filing insurance" charge imposed on plaintiffs in the written itemization of the "amount financed" contained in the materially uniform, written loan and consumer sales finance contract documents is an inaccurate material disclosure of the "amount financed" in violation of 15 U.S.C. §§ 1601(a), 1602(u), 1605 and Regulation Z (12 CFR § 226). The said inaccurate material "amount financed" disclosure in each said materially uniform written consumer loan and consumer sales finance contract document represented

that the said fee or charge was for the purchase of "non-filing insurance" when, in fact, no insurance was purchased. Said inaccurate material disclosure of the "amount financed" is in violation of the "strict compliance" requirements of the Truth-in-Lending Act, *Williams v. Public Finance Corp.*, 598 F.2d 349 (5th Cir. 1979); *Smith v. Chapman*, 614 F.2d 968 (5th Cir. 1980); *Fairley v. Turan-Foley Imports, Inc.*, 65 F.3d 475 (5th Cir. 1995); *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283 (7th Cir. 1997), in that the said "non-filing insurance" charge was not used to purchase insurance.

35. The defendant creditors' parent corporations are directly liable for the violations of TILA relating to "non-filing insurance" committed in consumer loan or consumer sales finance transactions originated by their subsidiary and affiliate corporations and/or are liable therefor under the doctrines of parental liability, alter ego, agency or instrumentality. *See United Steelworkers of America, AFL-CIO v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir. 1988).

36. Further, the defendant creditors are liable under TILA for the violations thereof committed in transactions originated by the assignors of the defendant creditors. 15 U.S.C. § 1641.

37. As a proximate result and consequence of the violation of the Truth-in-Lending Act as herein alleged, each plaintiff was unjustly deprived of money and injured and damaged in that each plaintiff was charged for "non-filing insurance."

38. The defendant creditors have been unjustly enriched at the expense of class members by the imposition of the said charges for "non-filing insurance" as herein alleged.

39. Pursuant to 15 U.S.C. § 1601, *et seq.*, and Regulation Z (12 CFR § 226, plaintiffs are entitled to declaratory relief with regard to the TILA violation alleged herein.

WHEREFORE, plaintiffs demand judgment against the defendant creditors, namely Beneficial Corporation, Beneficial Management Corporation of America, and Beneficial Florida, Inc., pursuant to 15 U.S.C. § 1601, *et seq.*, and Regulation Z (12 CFR § 226), and/or 28 U.S.C. §§ 2201 and 2202 as follows:

A. On behalf of the named plaintiff and the putative class:

1. For the Court's judgment or declaratory judgment that:

a. "Non-filing insurance," under the practices employed by the defendants as alleged and with regard to the type transactions involved in this litigation, is not insurance;

b. Charges for "non-filing insurance" may not be imposed under the practices employed by the defendants with regard to the type transactions involved in this litigation in the future;

c. The defendant creditors' conduct evidences a corporate policy of the defendant creditors to disregard the rights of the named plaintiffs and putative class members and to engage in a pattern and practice of unlawful conduct as part of their normal business operations, a pattern and practice which has resulted in economic damage to the named plaintiffs and putative class and will continue to damage the named plaintiffs and putative class members who are future customers of the defendant creditors with regard to the type transactions involved in this litigation; and

d. The defendant creditors' conduct violates 15 U.S.C. §§ 1601(a), 1602(u) and 1605.

2. Under and pursuant to the inherent equitable powers of the Court that are available for the proper and complete exercise of its

jurisdiction, 15 U.S.C. § 1601, *et seq.*, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and/or Rules 64 and 65, Fed.R.Civ.P., for a permanent injunction prohibiting charges for and the sale of "non-filing insurance" in the United States under the practices employed by the defendants with regard to the type transactions involved in this litigation, and for a judgment, declaratory judgment, mandatory injunction and/or equitable disgorgement requiring the defendant creditors and any others (including insurance companies) whose presence is necessary to afford the named plaintiffs and the putative class full and complete relief to make restitution, an accounting and disgorgement to the named plaintiffs and putative class members in the form of the return of the entire "non-filing insurance" charge imposed on each named plaintiff and putative class member, together with interest thereon, costs and expenses and reasonable attorneys' fees;

3. For such other further necessary, proper and appropriate equitable or declaratory relief as may be proper in the circumstances, including the establishment of a constructive trust and/or ordering an equitable accounting.

B. On behalf of the named plaintiff and the putative class:

1. An award of actual damages suffered by each member of each said class in the amount of the entire "non-filing insurance" charge imposed on each class member, together with interest thereon, pursuant to 15 U.S.C. § 1640(a)(1);

2. An award of the statutory penalty under 15 U.S.C. § 1640(a)(2)(B);

3. Appropriate prejudgment interest, expenses, and reasonable attorneys' fees.

## TILA COUNT TWO

### PLEAD IN THE ALTERNATIVE
### DEFENDANT CREDITORS ONLY

40. This TILA Count Two (Alternative) is brought on behalf of the class against the defendant creditors only, to-wit: Beneficial Corporation, BMCA, and Beneficial Florida.

41. At all times relevant to this complaint, the defendant creditors were and are engaged in the business of making consumer loans of money and of financing the consumer credit sale of goods.

42. The named plaintiff and each member of the class (hereafter collectively referred to as "plaintiffs") entered into a consumer loan or consumer sales finance transaction involving a uniform, written pre-printed contract with the defendant creditors (which term expressly includes all subsidiaries, affiliates and local operating subsidiary companies of the parent corporations) or the assignor thereof.

43. As part of the aforesaid transaction and pursuant to the terms of the said uniform, written, pre-printed contract, the defendant creditor imposed a charge on each plaintiff for "non-filing insurance" as part of the written itemization of the "amount financed" in each plaintiff's consumer loan or consumer sales finance contract documents.

44. After imposing the aforesaid "non-filing insurance" charge on plaintiffs, the defendant creditor either retained or forwarded to an insurance company all or part of the "non-filing insurance" fee charged to plaintiffs. The insurance company retained a percentage of the "non-filing insurance" fees so forwarded by the defendant creditor and, pursuant to a pre-arranged agreement between the defendant creditor and the insurance company, returned the majority of that money to the defendant creditor.

45. The "non-filing insurance" charge imposed on plaintiffs as part of the "amount financed" was not used to purchase "non-filing insurance" and the defendant creditors or their assignors and the insurance companies involved knew that the money so charged would not be used to purchase "non-filing insurance" when the charge was imposed on plaintiffs because the "non-filing insurance" policies do not adhere to the mandate of 15 U.S.C. § 1605(d)(2), which authorizes charges for "non-filing insurance" only when the charge is a "premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction" which statutory requirement was violated and not complied with by the defendants.

46. Instead of being used to purchase valid "non-filing insurance," the charge was imposed as part of a nationwide scheme designed for the purpose of increasing the income and profits of the defendant creditors and the insurance companies involved at the direct expense of the plaintiffs.

47. The disclosure of the "non-filing insurance" charge imposed on plaintiffs in the written itemization of the "amount financed" contained in the materially uniform, written loan and sales finance contract documents is an inaccurate material disclosure of the "amount financed" in violation of 15 U.S.C.

§§ 1601(a), 1602(u) and 1605, and Regulation Z (12 CFR § 226). The said inaccurate material "amount financed" disclosure in each said materially uniform written loan and sales finance contract document represented that the said fee or charge was for the purchase of "non-filing insurance" when, in fact, no valid "non-filing insurance" was purchased. Said inaccurate material disclosure of the "amount financed" is in violation of the "strict compliance" requirements of the Truth-in-Lending Act, *Williams v. Public Finance Corp.*, 598 F.2d 349 (5th Cir. 1979); *Smith v. Chapman*, 614 F.2d 968 (5th Cir. 1980); *Fairley v. Turan-Foley Imports, Inc.*, 65 F.3d 475 (5th Cir. 1995); *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283 (7th Cir. 1997), in that the said "non-filing insurance" charge was not used to purchase "non-filing insurance."

48. The defendant creditors' parent corporations are directly liable for the violations of TILA relating to "non-filing insurance" committed in loan or sales finance transactions originated by their subsidiary and affiliate corporations and/or are liable therefor under the doctrines of parental liability, alter ego, agency or instrumentality. *See United Steelworkers of America, AFL-CIO v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir. 1988).

49. Further, the defendant creditors are liable under TILA for the violations thereof committed in transactions originated by the assignors of the defendant creditors. 15 U.S.C. § 1641.

50. As a proximate result and consequence of the violation of the Truth-in-Lending Act as herein alleged, each plaintiff was unjustly deprived of money and injured and damaged in that each plaintiff was charged for "non-filing insurance."

51. The defendant creditors have been unjustly enriched at the expense of class members by the imposition of the said charges for "non-filing insurance" as herein alleged.

52. Pursuant to 15 U.S.C. § 1601, *et seq.*, plaintiffs are entitled to declaratory relief with regard to the TILA violation alleged herein.

WHEREFORE, plaintiffs demand judgment against the defendant creditors, namely Beneficial Corporation, Beneficial Management Corporation of America and Beneficial Florida, Inc., pursuant to 15 U.S.C. § 1601, *et seq.*, and Regulation Z (12 CFR § 226), and/or 28 U.S.C. §§ 2201 and 2202 as follows:

A. On behalf of the named plaintiff and the putative class:

1. For the Court's judgment or declaratory judgment that:

a. The "non-filing insurance" at issue in this action, under the practices employed by the defendant creditors as alleged and with regard to the type transactions involved in this litigation, is not "non-filing insurance" within the meaning of 15 U.S.C. § 1605(d)(2);

b. Charges for "non-filing insurance" may not be imposed under the practices employed by the defendant creditors with regard to the type transactions involved in this litigation in the future;

c. The defendant creditors' conduct evidences a corporate policy of the defendant creditors to disregard the rights of the named plaintiffs and putative class members and to engage in a pattern and practice of unlawful conduct as part of their normal business operations, a pattern and practice which has resulted in economic damage to the named plaintiffs and putative class and will continue to damage the named plaintiffs and putative class members who are future customers of the defendant creditors with regard to the type transactions involved in this litigation; and

d. The defendant creditors' conduct violates 15 U.S.C. §§ 1605(d)(2), 1601(a) and 1602(u).

2. Under and pursuant to the inherent equitable powers of the Court that are available for the proper and complete exercise of its jurisdiction, 15 U.S.C. § 1601, *et seq.*, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and/or Rules 64 and 65, Fed.R.Civ.P., for a permanent injunction prohibiting charges for and the sale of "non-filing insurance" in the United States under the practices employed by the defendants with regard to the type transactions involved in this litigation, and for a judgment, declaratory judgment, mandatory injunction and/or equitable disgorgement requiring the defendant creditors and any others (including insurance companies) whose presence is necessary to afford the named plaintiffs and the putative class full and complete relief to make restitution, an accounting and disgorgement to the named plaintiffs and putative class members in the form of the return of the entire "non-filing insurance" charge imposed on each named plaintiff and putative class member, together with interest thereon, costs and expenses and reasonable attorneys' fees;

3. For such other further necessary, proper and appropriate equitable or declaratory relief as may be proper in the circumstances,

including the establishment of a constructive trust and/or ordering an equitable accounting.

B. On behalf of the named plaintiff and the putative class:

1. An award of actual damages suffered by each member of each said class in the amount of the entire "non-filing insurance" charge imposed on each class member, together with interest thereon, pursuant to 15 U.S.C. § 1640(a)(1);

2. An award of the statutory penalty under 15 U.S.C. § 1640(a)(2)(B);

3. Appropriate prejudgment interest, expenses, and reasonable attorneys' fees.

## TILA COUNT THREE

### PLEAD IN THE ALTERNATIVE
### DEFENDANT CREDITORS ONLY

53. This TILA Count Three (Alternative) is brought on behalf of the class against the defendant creditors only, to-wit: Beneficial Corporation, BMCA and Beneficial Florida.

54. At all times relevant to this complaint, the defendant creditors

were and are engaged in the business of making consumer loans of money and of financing the consumer credit sale of goods.

55. The named plaintiff and each member of the class (hereafter collectively referred to as "plaintiffs") entered into a consumer loan or consumer sales finance transaction involving a uniform, written pre-printed contract with the defendant creditors (which term expressly includes all subsidiaries, affiliates and local operating subsidiary companies of the parent corporations) or the assignor thereof.

56. As part of the aforesaid transaction and pursuant to the terms of the said uniform, written, pre-printed contract, the defendant creditors imposed a charge on each plaintiff for "non-filing insurance" as part of the written itemization of the "amount financed" in each plaintiff's consumer loan or consumer sales finance contract documents.

57. After imposing the aforesaid "non-filing insurance" charge on plaintiffs, the defendant creditor either retained or forwarded to an insurance company all or part of the "non-filing insurance" fee charged to plaintiffs. The insurance company retained a percentage of the "non-filing insurance" fees so forwarded by the defendant creditor and, pursuant to a pre-arranged agreement

between the defendant creditor and the insurance company, returned the majority of that money to the defendant creditor.

58. The "non-filing insurance" charge imposed on plaintiffs as part of the "amount financed" was not used to purchase "non-filing insurance" as defined in 15 U.S.C. § 1605(d)(2) and the defendant creditors or their assignors knew that the money so charged would not be used to purchase "non-filing insurance" when the charge was imposed on plaintiffs, but rather the money was used to compensate the defendant creditor in the plaintiff/debtor's default or other credit loss.

59. Such a charge to compensate the defendant creditor for the plaintiff/debtor's default or other credit loss may not lawfully be included in the "amount financed," but rather, if a charge is made therefor at all, must be included as part of the "finance charge" in plaintiffs' consumer loan or consumer sales finance transaction documents. 15 U.S.C. § 1605(a)(5).

60. The defendant creditors violated 15 U.S.C. § 1605(a)(5) by uniformly including the said charge to compensate the defendant creditor for the plaintiff/debtor's default or other credit loss in the "amount financed" portion of plaintiffs' written consumer loan or consumer sales finance transaction documents.

61. The defendant creditors' parent corporations are directly liable for the violations of TILA relating to "non-filing insurance" committed in loan or consumer sales finance transactions originated by their subsidiary and affiliate corporations and/or are liable therefor under the doctrines of parental liability, alter ego, agency or instrumentality. *See United Steelworkers of America, AFL-CIO v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir. 1988).

62. Further, the defendant creditors are liable under TILA for the violations thereof committed in transactions originated by the assignors of the defendant creditors. 15 U.S.C. § 1641.

63. As a proximate result and consequence of the violation of the Truth-in-Lending Act as herein alleged, each plaintiff was unjustly deprived of money and injured and damaged in that each plaintiff was charged interest on the "non-filing insurance" charge imposed as part of the "amount financed."

64. The defendant creditors have been unjustly enriched at the expense of class members by the imposition of the said charges for "non-filing insurance" as part of the "amount financed."

65. Pursuant to 15 U.S.C. § 1601, *et seq.*, plaintiffs are entitled to declaratory relief with regard to the TILA violation alleged herein.

WHEREFORE, plaintiffs demand judgment against the defendant creditors, namely Beneficial Corporation, Beneficial Management Corporation of America and Beneficial Florida, Inc., pursuant to 15 U.S.C. § 1601, *et seq.*, and Regulation Z (12 CFR § 226), and/or 28 U.S.C. §§ 2201 and 2202 as follows:

A. On behalf of the named plaintiff and the putative class:

1. For the Court's judgment or declaratory judgment that:

a. "Non-filing insurance," under the practices employed by the defendant creditors with regard to the type transactions involved in this litigation, is not "non-filing insurance" as defined in 15 U.S.C. § 1605(d)(2), but rather is used to compensate the defendant creditors for plaintiff/debtor's default or other credit loss of the type described in 15 U.S.C. § 1605(a)(5);

b. Charges for "non-filing insurance" may not be imposed as part of the "amount financed" under the practices employed by the defendant creditors with regard to the type transactions involved in this litigation in the future;

c. The defendant creditors' conduct evidences a corporate policy of the defendant creditors to disregard the rights of the named

plaintiffs and putative class members and to engage in a pattern and practice of unlawful conduct as part of their normal business operations, a pattern and practice which has resulted in economic damage to the named plaintiffs and putative class and will continue to damage the named plaintiffs and putative class members who are future customers of the defendant creditors with regard to the type transactions involved in this litigation; and

d. The defendant creditors' conduct violates 15 U.S.C. § 1605(a)(5).

2. Under and pursuant to the inherent equitable powers of the Court that are available for the proper and complete exercise of its jurisdiction, 15 U.S.C. § 1601, *et seq.*, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and/or Rules 64 and 65, Fed.R.Civ.P., for a permanent injunction prohibiting the imposition of charges for "non-filing insurance" as part of the "amount financed" in the United States under the practices employed by the defendants with regard to the type transactions involved in this litigation, and for a judgment, declaratory judgment, mandatory injunction and/or equitable disgorgement requiring the defendant creditors and any others (including insurance companies) whose presence is

necessary to afford the named plaintiffs and the putative class full and complete relief to make restitution, an accounting and disgorgement to the named plaintiffs and putative class members in the form of all interest on the "non-filing insurance" charge imposed on each named plaintiff and putative class member, together with interest thereon, costs and expenses and reasonable attorneys' fees;

3. For such other further necessary, proper and appropriate equitable or declaratory relief as may be proper in the circumstances, including the establishment of a constructive trust and/or ordering an equitable accounting.

B. On behalf of the named plaintiff and the putative class:

1. An award of actual damages suffered by each member of said class in the amount of all interest on the "non-filing insurance" charge imposed on each class member, together with interest thereon, pursuant to 15 U.S.C. § 1640(a)(1);

2. An award of the statutory penalty under 15 U.S.C. § 1640(a)(2)(B);

3. Appropriate prejudgment interest, expenses, and reasonable attorneys' fees.

**- V. -**

**CLAIMS FOR VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)**

**RELEVANT TIMES**

66. The relevant times to the RICO claims asserted on behalf of the class in this action are from a date four (4) years prior to the commencement of this action for an open period continuing into the future.

67. The wrongful conduct of the defendants herein is ongoing and continuing, thus posing the threat of continued criminal conduct, and will extend into the future without the judgment and injunction of this Court prohibiting same.

**CLASS PERIOD**

68. The class period in this action for RICO commences on a date four (4) years prior to the commencement of this action.

**PARTIES AND PARTICIPANTS**

69. The defendant creditors, all of which are knowing, willful and voluntary participants in the scheme, are Beneficial Corporation, BMCA and Beneficial Florida.

70. The defendant insurance companies, all of which are knowing, willful and voluntary participants in the scheme, are BIG, BIAN, Wesco, American Centennial and WPCIC.

71. Each of the defendants was an institutional perpetrator of the fraud and scheme to defraud alleged herein. Each defendant, specifically including each and every parent corporation and its subsidiaries, knowingly undertook or was caused to undertake conduct to further the scheme. The parent corporations are directly liable for the violations of RICO alleged herein. The subsidiaries acted at all times for the benefit of the parent corporations. At all relevant times, the parent corporations were aware of and knowingly permitted the conduct undertaken by the subsidiaries to perpetrate the fraud and scheme to defraud

because of the substantial benefit which the parent corporations received from the scheme.

72. The named plaintiff class representative entered into a consumer loan or consumer sales finance transaction with the defendant creditors in which a charge for "non-filing insurance" was charged, and for which transaction "non-filing insurance" was provided by at least one insurance company.

**THE PATTERN OF RACKETEERING ACTIVITY**

73. The violations of RICO alleged herein are accomplished by the defendants (creditors and insurance companies, including their parents, subsidiaries and affiliates), in part, as part of an nationwide conspiracy within the meaning of 18 U.S.C. § 1962(d) between and among the said defendants, and between and among the said defendants and other unnamed creditors and insurance companies.

74. The aforesaid combination and conspiracy is "horizontal" between the different creditors and between the different insurance companies, and "vertical" between the creditors and the particular insurance company or insurance companies providing "non-filing insurance" to or otherwise involved in the "non-filing insurance" program of each particular creditor.

75. Additionally, the "vertical" conspiracy consists of an "intracorporate conspiracy" between the parent corporations and their subsidiary and affiliate corporations (whether or not those subsidiary and affiliate corporations are named as defendants), by virtue of which the parent corporations, as co-conspirators, are liable for the fraudulent and wrongful activities of their subsidiary and affiliate corporations in connection with the "non-filing insurance" scheme herein described.

76. In addition, the defendant creditors' parent corporations are directly liable for the violations of RICO relating to "non-filing insurance" committed in loan or consumer sales finance transactions originated by their subsidiary and affiliate corporations and/or are liable therefor under the doctrines of alter ego, agency or instrumentality. *See United Steelworkers of America, AFL-CIO v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir. 1988).

77. During all or part of the relevant times, the creditors and insurance companies, acting alone and together and in conspiracy, combination and conjunction with each other, their subsidiary and affiliate corporations, and with other unnamed creditors and insurance companies nationwide, concocted and implemented a scam, scheme and artifice to defraud the plaintiffs by imposing a

fraudulent charge for "non-filing insurance" under and pursuant to uniform, written contract documents.

78. As part of the scheme, the creditors and insurance companies, alone and together with each other, their subsidiary and affiliate corporations, and other unnamed co-conspirators, determined and agreed to impose on plaintiffs a fraudulent "non-filing insurance" charge by means of uniform, written, pre-printed contracts and documents under the circumstances herein described and alleged, and agreed to accept assignment of transactions from other creditors knowing that plaintiffs in those assigned transactions had been charged a fraudulent "non-filing insurance" fee under the circumstances herein described and alleged.

79. The so-called "non-filing insurance" at issue in this case is not insurance and, at the time said charge was imposed, the defendants knew that the so-called "non-filing insurance" was not insurance. Instead of being insurance, the said "non-filing insurance" charge is nothing more than a fraudulent charge imposed on the plaintiffs.

80. Alternatively, the so-called "non-filing insurance" is not valid "non-filing insurance" within the meaning of 15 U.S.C. § 1605(d)(2) because the policies do not adhere to the mandate of 15 U.S.C. § 1605(d)(2), and the charges

are imposed and the money is used in violation and for a purpose other than that prescribed by 15 U.S.C. § 1605(d)(2), which authorizes charges for "non-filing insurance" only when the charge is a "premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction" which statutory requirement was violated and not complied with by the defendants. Instead of being valid "non-filing insurance," the said charge is nothing more than a fraudulent charge imposed on the plaintiffs.

81. Alternatively, the "non-filing insurance" charge imposed on plaintiffs as part of the "amount financed" was not used to purchase "non-filing insurance" as defined in 15 U.S.C. § 1605(d)(2) and the defendant creditors knew that the money so charged would not be used to purchase "non-filing insurance" when the charge was imposed on plaintiffs, but rather the money was used to compensate the defendant creditor in the plaintiff/debtor's default or other credit loss.

82. As part of and in implementation of the aforesaid scheme to defraud, combination and conspiracy, during the course of the transaction with each plaintiff as heretofore described, the defendant creditors, in furtherance of the scheme and with the knowledge, consent and participation of each defendant insurance company, and as agreed by and between the co-conspirator defendant

creditors and defendant insurance companies nationwide, uniformly represented in writing to each plaintiff, whether expressly or by implication, as part of uniform, written, pre-printed contract documents, that the "non-filing insurance" charge imposed on plaintiffs would be used to purchase "non-filing insurance."

83. The said uniform representation, made in writing as part of the said written contracts or documents, was false and each creditor and insurance company knew it was false. Each creditor and each insurance company knew that the charge imposed on plaintiffs for purported "non-filing insurance" would not be not used to purchase "non-filing insurance" as uniformly represented to plaintiffs as part of the written contracts and documents, but rather that the money would be sent to the insurance company under the guise of purchasing "non-filing insurance" in conformance with the law; however, no "non-filing insurance" was purchased and, pursuant to a pre-arranged agreement, the majority of said money was returned to the defendant creditor by the defendant insurance company.

84. With said knowledge, and in conformance with and furtherance of the nationwide conspiracy and combination between these defendants and other conspiring creditors and insurance companies, the creditors, with the knowledge, consent and participation of the insurance companies, charged each plaintiff for

"non-filing insurance" by means of uniform, written, pre-printed contracts and documents knowing that the money so charged would not be used to purchase "non-filing insurance" and knowing that the said charge was fraudulent.

85. As a further part of the scheme, the defendant creditors and defendant insurance companies, consistent with and in furtherance of the conspiracy and in accordance with the program operated by other lenders and insurance companies nationwide, agreed that each defendant insurance company would pay its respective defendant creditors kickbacks in various forms; *e.g.*, unlawful commissions, premium refunds, bogus and invalid "claims payments," reinsurance agreements and other payments denominated in various and sundry ways.

86. It was part of the scheme to defraud that the participants therein, the defendants, would and did agree and conspire together between and/or among themselves and others to devise and participate in a plan of deceit and deception whereby they would and did misrepresent the nature and purpose of the charges for "non-filing insurance" imposed on plaintiffs, and use false and fraudulent pretenses, representations and promises calculated to deceive persons of ordinary prudence. The defendants acted unlawfully, intentionally and willfully with intent

to defraud, that is, knowingly, and with specific intent to deceive in order to cause financial gain to themselves, and to the detriment of the plaintiffs.

87. In the conception, execution, implementation, operation and furtherance of the aforesaid nationwide scheme to defraud, the defendants engaged and continue to engage in a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1), consisting of more than two separate but interrelated violations of federal law, to-wit:

A. Mail fraud in violation of 18 U.S.C. §§ 2, 1341;

B. Interstate transportation of fraudulently obtained money (transportation fraud) in violation of 18 U.S.C. §§ 2, 2314; or, with knowledge of the overall objective of the heretofore alleged fraudulent scheme and conspiracy, conspired with other defendants, or the subsidiary or affiliate corporations thereof, which engaged in a pattern of racketeering activity as alleged, all in furtherance of the said scheme to defraud the plaintiffs, which pattern of racketeering activity is related to the affairs of the enterprise or enterprises hereafter alleged and by which pattern of racketeering activity the defendants did conduct or participate, directly or indirectly, in the affairs of the enterprise or enterprises. *Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935 (11th Cir. 1997); *United States*

*v. Starrett*, 55 F.3d 1525 (11th Cir. 1995); *United States v. Carter*, 721 F.2d 1514 (11th Cir. 1984).

88. The said violations of 18 U.S.C. §§ 2, 1341 and 2, 2314 by the defendants or their conspirators occurred over a substantial period of time (*i.e.,* a number of years beginning not later than a date four (4) years prior to the commencement of this action) and continue at this time, thus posing a threat of continued criminal activity in connection with the said "non-filing insurance" scheme. All the said separate acts of mail fraud and transportation fraud comprising the pattern of racketeering activity are directed toward the singular goal of the underlying fraudulent scheme and conspiracy, to-wit: Depriving the plaintiffs of money by the imposition of fraudulent charges for "non-filing insurance."

89. During the relevant times and in furtherance of and for the singular purpose of executing the nationwide scheme and artifice to defraud, in accordance with the conspiracy between these creditors and insurance companies, including the parent, subsidiary and affiliate corporations of both, and other unnamed conspirators, the creditors and insurance companies, or the conspirators therewith, for themselves or on behalf of each other, on numerous occasions used and caused

to be used mail depositories of the United States Postal Service by (a) placing and causing to be placed mailable matter in said depositories in furtherance of the aforesaid scheme to defraud, (b) removing and causing to be removed mailable matter from said depositories in furtherance of the aforesaid scheme to defraud, (c) using the mails to collect the proceeds of the scheme to defraud and/or (d) taking action that would reasonably result in plaintiffs' using the mails to pay the fraudulent "non-filing insurance" charge, each such use of the mails in connection with the scheme and artifice to defraud and to obtain money by false pretenses, constituting the offense of mail fraud as proscribed and prohibited by 18 U.S.C. §§ 2, 1341.

90. The violations of 18 U.S.C. §§ 2, 1341 by defendants and their co-conspirators proximately caused injury to the plaintiffs in that, as a proximate result of the scheme and artifice to defraud, plaintiffs became or reasonably believed they became obligated to pay the fraudulent "non-filing insurance" charge and interest thereon and did pay all or part of the said fraudulent "non-filing insurance" charge and interest thereon.

91. All the separate violations of 18 U.S.C. §§ 2, 1341 are directed toward the singular goal of the underlying fraudulent scheme and conspiracy, to-

wit: Depriving the plaintiffs of money by the imposition of fraudulent charges for "non-filing insurance," and are related to each other, and thus constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

92. During the relevant times and in furtherance of and for the singular purpose of executing the nationwide scheme and artifice to defraud, in accordance with the conspiracy between these creditors and insurance companies, including the parent, subsidiary and affiliate corporations of both, and other unnamed conspirators, the creditors and insurance companies, or the conspirators therewith, for themselves or on behalf of each other, having devised the heretofore alleged scheme to defraud, on numerous occasions, transported by mail or by wire or electronic transfer or otherwise in interstate commerce in the execution of the aforesaid scheme to defraud money having a value of $5,000.00 or more, to-wit: "Non-filing insurance" premiums from the creditors to the insurance companies, and "claims" for "non-filing insurance" and other payments from the insurance companies to the creditors, which constitutes the proceeds of the fraudulent scheme herein described and which money was wrongfully taken from class members, knowing said money had been obtained by fraud, each such interstate

transportation constituting the offense of transportation fraud as proscribed and prohibited by 18 U.S.C. §§ 2, 2314.

93. The violations of 18 U.S.C. §§ 2, 2314 by defendants and their co-conspirators proximately caused injury to the plaintiffs in that, as a proximate result of the scheme and artifice to defraud, the defendants fraudulently obtained the said money from plaintiffs and transported same in interstate commerce between the defendants and co-conspirators in order to fully execute and realize the profits of the scheme.

94. All the separate violations of 18 U.S.C. §§ 2, 2314 are directed toward the singular goal of the underlying fraudulent scheme and conspiracy, to-wit: Depriving the plaintiffs of money by the imposition of fraudulent charges for "non-filing insurance," and are related to each other, and thus constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

95. The scheme and artifice to defraud, the pattern of racketeering activity and the unlawful association of the defendants in furtherance of the scheme and the acts of racketeering are continuing and ongoing and, without the injunction and other judgments and orders of this Court, will likely continue into the future to the economic detriment of the members of the plaintiff class, thus

posing the threat of continued criminal activity and thereby making appropriate final declaratory, equitable and injunctive relief.

96. In connection with the activities giving rise to this action, the defendants acted with malice, intent and knowledge and a wanton and reckless disregard of the rights of the plaintiffs, the class, and others.

97. At all the relevant times, in connection with the activities giving rise to this action, the defendants conspired with each other and with others unknown, to engage in the various activities set forth herein and aided and abetted one another in these activities all as proscribed and prohibited by the statutes as set forth herein, and specifically by 18 U.S.C. § 2; and conspired to do so as proscribed and prohibited by 18 U.S.C. § 1962(d).

## NARRATIVE OF FACTS

(See Appendix 2)

98. On September 21, 1994, plaintiff Kenneth R. Christ, Jr., entered into a transaction with the defendant creditors, acting by and through Beneficial Florida, and, pursuant to the aforesaid scheme to defraud and conspiracy, as part of that transaction, was charged for "non-filing insurance" in the "amount financed" portion of his contract documents under the circumstances heretofore alleged.

99. Pursuant to the aforesaid scheme to defraud and conspiracy, and in the regular and usual course of the defendants' business nationwide, within 30 days of the date of each said transaction, the creditor defendants sent Mr. Christ a monthly payment coupon book referable to the said transaction by means of the United States mails demanding that he make a monthly payment on the said transaction, which monthly payment included a portion of the fraudulently imposed "non-filing insurance" charge. Included in the said monthly payment coupon book was the address of the creditor defendants to which the said monthly payments should be mailed or made. During the term of the said contract, Mr.

Christ also received late payment notices from the creditor defendants by means of the United States mails.

100. In reliance on and in response to and as demanded by the said monthly payment coupon book and late payment notices, Mr. Christ did, in fact, make monthly payments to the creditor defendants, resulting in his injury as heretofore alleged.

101. The creditor defendants' mailing of the said monthly payment coupon book and late payment notices to Mr. Christ and other members of the plaintiff class was designed, calculated and intended by the defendants (including the creditor and insurance company defendants) to extract money, including money for the fraudulent "non-filing insurance" charge from plaintiffs, and was in furtherance and execution of the heretofore described scheme to defraud in violation of 18 U.S.C. §§ 2, 1341. The said monthly payment coupon book and late payment notices were designed, calculated and intended by the defendants to reassure the plaintiffs that the collection of the debt created by the contract, including payment of the fraudulent "non-filing insurance" charge, was

proceeding lawfully and legitimately and that the charges imposed by the defendants were lawful and proper.

# RICO COUNT ONE

## VIOLATION OF 18 U.S.C. § 1962(c)
## ALL DEFENDANTS

102. Plaintiffs reallege and incorporate by reference herein each and every material allegation of this complaint.

103. The RICO Count One is brought on behalf of the class against all defendants identified above (creditors and insurance companies).

104. As part of the heretofore alleged scheme, the defendant creditors identified above and defendant insurance companies identified above, alone and together with each other, their subsidiary and affiliate corporations, and other unnamed co-conspirators, determined and agreed to impose on plaintiffs a fraudulent "non-filing insurance" charge by means of uniform, written, pre-printed contracts and documents under the circumstances herein described and alleged, and agreed to accept assignment of transactions knowing that plaintiffs in those

assigned transactions had been charged a fraudulent "non-filing insurance" fee under the circumstances herein described and alleged.

105. The so-called "non-filing insurance" at issue in this case is not insurance and, at the time said charge was imposed, the defendants knew that the so-called "non-filing insurance" was not insurance. Instead of being insurance, the said "non-filing insurance" charge is nothing more than a fraudulent charge imposed on the plaintiffs.

106. Alternatively, the so-called "non-filing insurance" is not valid "non-filing insurance" within the meaning of 15 U.S.C. § 1605(d)(2) because the policies do not adhere to the mandate of 15 U.S.C. § 1605(d)(2) in that the charges are imposed and the money is used in violation and for a purpose other than that prescribed by 15 U.S.C. § 1605(d)(2), which authorizes charges for "non-filing insurance" only when the charge is a "premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction" which statutory requirement was violated and not complied with by the defendants. Instead of being valid "non-filing insurance," the said charge is nothing more than a fraudulent charge imposed on the plaintiffs.

107. As part of and in implementation of the aforesaid scheme to defraud, combination and conspiracy, during the course of the transaction with each plaintiff as heretofore described, the defendant creditors, in furtherance of the scheme and with the knowledge, consent and participation of each defendant insurance company, and as agreed by and between the co-conspirator defendant creditors and defendant insurance companies nationwide, uniformly represented in writing to each plaintiff, whether expressly or by implication, as part of uniform, written, pre-printed contract documents, that the "non-filing insurance" charge imposed on plaintiffs would be used to purchase "non-filing insurance."

108. The said uniform representation, made in writing as part of the said written contracts or documents, was false and each creditor and insurance company knew it was false. Each creditor and each insurance company knew that the charge imposed on plaintiffs for purported "non-filing insurance" would not be not used to purchase "non-filing insurance" as uniformly represented to plaintiffs as part of the written contracts and documents, but rather that the money would be sent to the insurance company under the guise of purchasing "non-filing insurance" in conformance with the law; however, no "non-filing insurance" was

purchased and, pursuant to a pre-arranged agreement, the majority of said money was returned to the defendant creditor by the defendant insurance company.

109. With said knowledge, and in conformance with and furtherance of the nationwide conspiracy and combination between these defendants and other conspiring creditors and insurance companies, the creditors, with the knowledge, consent and participation of the insurance companies, charged each plaintiff for "non-filing insurance" by means of uniform, written, pre-printed contracts and documents knowing that the money so charged would not be used to purchase "non-filing insurance" and knowing that the said charge was fraudulent.

110. Each named plaintiff and each member of the class is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

111. Pursuant to *United States v. Hartley*, 678 F.2d 968 (11th Cir. 1982), certain insurance companies, to-wit: Wesco, American Centennial and WPCIC, which are named as defendants, each separately constitute an "enterprise" as to the particular creditor defendants associated therewith, within the meaning of 18 U.S.C. §§ 1961(4) and 1964(c), each of which was engaged in activities which affect or affected interstate commerce during the relevant times.

112. Each said insurance company enterprise, or the subsidiaries of the said insurance company enterprise, provided "non-filing insurance" to the defendant creditors associated therewith during part or all of the class period in one or more states of the United States, or was otherwise involved in the "non-filing insurance" programs of the defendant creditors associated therewith.

113. Each said insurance company enterprise is a duly formed, legal entity, governed by officers and a board of directors, with a continuing existence, whose existence is separate and apart from the pattern of racketeering activity.

114. Each defendant (including those defendants identified as the enterprise) is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

115. Each of the defendant creditors (including parent corporations) identified above was associated with one or more of the said enterprises, and did conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise or enterprises in relationship to the class through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(b), 1961(5) and 1962(c) as heretofore alleged, to-wit:

A. Multiple instances of mail fraud in violation of 18 U.S.C. §§ 2, 1341; and

B. Multiple instances of interstate transportation of fraudulently obtained money (transportation fraud) in violation of 18 U.S.C. §§ 2, 2314.

116. The aforesaid pattern of racketeering activity by the defendant creditors is related, directly or indirectly, to the conduct of the affairs of the enterprise or enterprises with which each defendant creditor is associated in that the heretofore described scheme regarding "non-filing insurance" regularly and repeatedly used the facilities and services of the enterprise or enterprises and could not be accomplished without the participation of both the creditors and insurance companies as herein alleged. Both the creditors and insurance companies also profit and benefit from the scheme and have an economic interest in the perpetuation and growth of the "non-filing insurance" scheme.

117. Each class member suffered injury to his property, within the meaning of 18 U.S.C. § 1964(c), by reason of the violation of 18 U.S.C. § 1962(c) committed by the defendants as heretofore alleged.

118. The defendants have been unjustly enriched at the expense of class members by the imposition of charges for and the collection of the said charges for "non-filing insurance" as herein alleged.

119. The scheme and artifice to defraud, the pattern of racketeering activity and the unlawful association of the defendants in furtherance of the scheme and the acts of racketeering are continuing and ongoing and, without the injunction and other judgments and orders of this Court, will likely continue into the future to the economic detriment of the members of the plaintiff class, thus posing the threat of continued criminal activity and thereby making appropriate final declaratory, equitable and injunctive relief.

WHEREFORE, plaintiffs demand judgment against all the defendant creditors, namely Beneficial Corporation, Beneficial Management Corporation of America, and defendant insurance companies, namely Beneficial Insurance Group, Inc., Beneficial Insurance Agency of Nevada, Wesco Insurance Company, American Centennial Insurance Company and Wilmington Property and Casualty Insurance Company, pursuant to 18 U.S.C. § 1964 and/or 28 U.S.C. §§ 2201 and 2202, as follows:

A. On behalf of the named plaintiff and the putative class:

1. For the Court's judgment or declaratory judgment that:

a. The "non-filing insurance" at issue in this action, under the practices employed by the defendants as alleged and with regard to the type

transactions involved in this litigation, is not insurance or, alternatively, is not "non-filing insurance";

b. Charges for "non-filing insurance" may not be imposed under the practices employed by the defendants with regard to the type transactions involved in this litigation in the future;

c. The defendants' conduct evidences a corporate policy of the defendants to disregard the rights of the named plaintiffs and putative class members and to engage in a pattern and practice of unlawful conduct as part of their normal business operations, a pattern and practice which has resulted in economic damage to the named plaintiffs and putative class and will continue to damage the named plaintiffs and putative class members who are future customers of the defendants with regard to the type transactions involved in this litigation; and

d. The defendants' conduct violates 18 U.S.C. § 1962(c).

2. Under and pursuant to the inherent equitable powers of the Court that are available for the proper and complete exercise of its jurisdiction, 18 U.S.C. § 1964, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and/or Rules 64 and 65, Fed.R.Civ.P., for a permanent injunction

prohibiting charges for and the sale of "non-filing insurance" in the United States under the practices employed by the defendants with regard to the type transactions involved in this litigation, and for a judgment, declaratory judgment, mandatory injunction and/or equitable disgorgement requiring the defendants and any others whose presence is necessary to afford the named plaintiffs and the putative class full and complete relief to make restitution, an accounting and disgorgement to the named plaintiffs and putative class members in the form of the return of the entire "non-filing insurance" charge imposed on each named plaintiff and putative class member, together with interest thereon, costs and expenses and reasonable attorneys' fees;

3. For such other further necessary, proper and appropriate equitable or declaratory relief as may be proper in the circumstances, including the establishment of a constructive trust and/or ordering an equitable accounting.

B. On behalf of the named plaintiff and the putative class:

1. For an award of actual damages equal to the amount of the "non-filing insurance" fee or charge imposed on each member of each said class,

together with interest thereon, and treble damages with regard to said amounts, for the defendants' violation of 18 U.S.C. § 1962(c);

2. For appropriate prejudgment interest, expenses, and reasonable attorneys' fees.

# RICO CONSPIRACY COUNT ONE

## VIOLATION OF 18 U.S.C. § 1962(d)
## ALL DEFENDANTS

120. Plaintiffs reallege and incorporate by reference herein each and every material allegation of this complaint.

121. The RICO Conspiracy Count One is brought on behalf of the class against all defendants identified above (creditors and insurance companies).

122. As part of the heretofore alleged scheme, the defendant creditors identified above and defendant insurance companies identified above, alone and together with each other, their subsidiary and affiliate corporations, and other unnamed co-conspirators, determined and agreed to impose on plaintiffs a fraudulent "non-filing insurance" charge by means of uniform, written, pre-printed contracts and documents under the circumstances herein described and alleged, and agreed to accept assignment of transactions knowing that plaintiffs in those

assigned transactions had been charged a fraudulent "non-filing insurance" fee under the circumstances herein described and alleged.

123. The so-called "non-filing insurance" at issue in this case is not insurance and, at the time said charge was imposed, the defendants knew that the so-called "non-filing insurance" was not insurance. Instead of being insurance, the said "non-filing insurance" charge is nothing more than a fraudulent charge imposed on the plaintiffs.

124. Alternatively, the so-called "non-filing insurance" is not valid "non-filing insurance" within the meaning of 15 U.S.C. § 1605(d)(2) because the policies do not adhere to the mandate of 15 U.S.C. § 1605(d)(2) in that the charges are imposed and the money is used in violation and for a purpose other than that prescribed by 15 U.S.C. § 1605(d)(2), which authorizes charges for "non-filing insurance" only when the charge is a "premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction" which statutory requirement was violated and not complied with by the defendants. Instead of being valid "non-filing insurance," the said charge is nothing more than a fraudulent charge imposed on the plaintiffs.

125. As part of and in implementation of the aforesaid scheme to defraud, combination and conspiracy, during the course of the transaction with each plaintiff as heretofore described, the defendant creditors, in furtherance of the scheme and with the knowledge, consent and participation of each defendant insurance company, and as agreed by and between the co-conspirator defendant creditors and defendant insurance companies nationwide, uniformly represented in writing to each plaintiff, whether expressly or by implication, as part of uniform, written, pre-printed contract documents, that the "non-filing insurance" charge imposed on plaintiffs would be used to purchase "non-filing insurance."

126. The said uniform representation, made in writing as part of the said written contracts or documents, was false and each creditor and insurance company knew it was false. Each creditor and each insurance company knew that the charge imposed on plaintiffs for purported "non-filing insurance" would not be not used to purchase "non-filing insurance" as uniformly represented to plaintiffs as part of the written contracts and documents, but rather that the money would be sent to the insurance company under the guise of purchasing "non-filing insurance" in conformance with the law; however, no "non-filing insurance" was

purchased and, pursuant to a pre-arranged agreement, the majority of said money was returned to the defendant creditor by the defendant insurance company.

127. With said knowledge, and in conformance with and furtherance of the nationwide conspiracy and combination between these defendants and other conspiring creditors and insurance companies, the creditors, with the knowledge, consent and participation of the insurance companies, charged each plaintiff for "non-filing insurance" by means of uniform, written, pre-printed contracts and documents knowing that the money so charged would not be used to purchase "non-filing insurance" and knowing that the said charge was fraudulent.

128. Each named plaintiff and each member of the class is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

129. Pursuant to *United States v. Hartley*, 678 F.2d 968 (11th Cir. 1982), certain insurance companies, to-wit: Wesco, American Centennial and WPCIC, which are named as defendants, each separately constitute an "enterprise" as to the creditor defendants associated therewith, within the meaning of 18 U.S.C. §§ 1961(4) and 1964(c), each of which was engaged in activities which affect or affected interstate commerce during the relevant times.

130. Each said insurance company enterprise, or the subsidiaries of the said insurance company enterprise, provided "non-filing insurance" to the defendant creditors associated therewith during part or all of the class period in one or more states of the United States, or was otherwise involved in the "non-filing insurance" programs of the defendant creditors associated or aligned therewith.

131. Each said insurance company enterprise is a duly formed, legal entity, governed by officers and a board of directors, with a continuing existence, whose existence is separate and apart from the pattern of racketeering activity.

132. Each defendant (including those defendants identified as the enterprise) is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

133. Each of the defendant creditors (including parent corporations) identified above and defendant insurance companies identified above was associated with one or more of the said enterprises, and conspired within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c), that is, the defendants, their parent, subsidiary and affiliate corporations, and other creditors and insurance companies nationwide, conspired to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise in relationship to the

class through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(b), 1961(5) and 1962(c) as heretofore alleged, to-wit:

A. Multiple instances of mail fraud in violation of 18 U.S.C. §§ 2, 1341; and

B. Multiple instances of interstate transportation of fraudulently obtained money (transportation fraud) in violation of 18 U.S.C. §§ 2, 2314.

134. The defendants agreed to the overall objective of the conspiracy, to-wit: To obtain money from the plaintiffs by means of the fraudulent "non-filing insurance" scheme as heretofore alleged, and committed one or more overt acts in furtherance of the said conspiracy. *Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935 (11th Cir. 1997).

135. The conspiracy to violate 18 U.S.C. § 1962(c) alleged herein is "horizontal" between the different creditors and between the different insurance companies, and "vertical" between the creditors and the particular insurance company or insurance companies providing "non-filing insurance" to or otherwise involved in the "non-filing insurance" program of each particular creditor.

136. The parent corporations and the subsidiary and affiliate corporations thereof engaged and continue to engage in an "intracorporate conspiracy" to

violate 18 U.S.C. § 1962(c) as alleged herein, and by virtue of which intracorporate conspiracy the parent corporations are liable as co-conspirators for the fraudulent activities of their subsidiary and affiliate corporations as herein alleged.

137. Each class member suffered injury to his property, within the meaning of 18 U.S.C. § 1964(c), by reason of the violation of 18 U.S.C. § 1962(d) committed by the defendants as heretofore alleged.

WHEREFORE, plaintiffs demand judgment against all the defendant creditors, namely Beneficial Corporation, Beneficial Management Corporation of America, and defendant insurance companies, namely Beneficial Insurance Group, Inc., Beneficial Insurance Agency of Nevada, Wesco Insurance Company, American Centennial Insurance Company and Wilmington Property and Casualty Insurance Company, pursuant to 18 U.S.C. § 1964 and/or 28 U.S.C. §§ 2201 and 2202, as follows:

A. On behalf of the named plaintiff and the putative class:

1. For the Court's judgment or declaratory judgment that:

a. The "non-filing insurance" at issue in this action, under the practices employed by the defendants as alleged and with regard to the type

transactions involved in this litigation, is not insurance or, alternatively, is not "non-filing insurance";

b. Charges for "non-filing insurance" may not be imposed under the practices employed by the defendants with regard to the type transactions involved in this litigation in the future;

c. The defendants' conduct evidences a corporate policy of the defendants to disregard the rights of the named plaintiffs and putative class members and to engage in a pattern and practice of unlawful conduct as part of their normal business operations, a pattern and practice which has resulted in economic damage to the named plaintiffs and putative class and will continue to damage the named plaintiffs and putative class members who are future customers of the defendants with regard to the type transactions involved in this litigation; and

d. The defendants' conduct violates 18 U.S.C. § 1962(d).

2. Under and pursuant to the inherent equitable powers of the Court that are available for the proper and complete exercise of its jurisdiction, 18 U.S.C. § 1964, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and/or Rules 64 and 65, Fed.R.Civ.P., for a permanent injunction

prohibiting charges for and the sale of "non-filing insurance" in the United States under the practices employed by the defendants with regard to the type transactions involved in this litigation, and for a judgment, declaratory judgment, mandatory injunction and/or equitable disgorgement requiring the defendants and any others whose presence is necessary to afford the named plaintiffs and the putative class full and complete relief to make restitution, an accounting and disgorgement to the named plaintiffs and putative class members in the form of the return of the entire "non-filing insurance" charge imposed on each named plaintiff and putative class member, together with interest thereon, costs and expenses and reasonable attorneys' fees;

3. For such other further necessary, proper and appropriate equitable or declaratory relief as may be proper in the circumstances, including the establishment of a constructive trust and/or ordering an equitable accounting.

B. On behalf of the named plaintiff and the putative class:

1. For an award of actual damages equal to the amount of the "non-filing insurance" fee or charge imposed on each member of each said class,

together with interest thereon, and treble damages with regard to said amounts, for the defendants' violation of 18 U.S.C. § 1962(d);

2. For appropriate prejudgment interest, expenses, and reasonable attorneys' fees.

## RICO COUNT TWO

### VIOLATION OF 18 U.S.C. § 1962(c)
### PLEAD IN THE ALTERNATIVE
### ALL DEFENDANTS

138. Plaintiffs reallege and incorporate by reference herein each and every material allegation of this complaint.

139. The RICO Count Two (Alternative) is brought on behalf of the class against all defendants identified above (creditors and insurance companies).

140. As part of the heretofore alleged scheme, the defendant creditors identified above and defendant insurance companies identified above, alone and together with each other, their subsidiary and affiliate corporations, and other unnamed co-conspirators, determined and agreed to impose on plaintiffs a fraudulent "non-filing insurance" charge as part of the "amount financed" by means of uniform, written, pre-printed contracts and documents under the circumstances herein described and alleged, and agreed to accept assignment of transactions knowing that plaintiffs in those assigned transactions had been

charged a fraudulent "non-filing insurance" fee as part of the "amount financed" under the circumstances herein described and alleged.

141. The "non-filing insurance" charge imposed on plaintiffs as part of the "amount financed" was not used to purchase "non-filing insurance" and the defendants knew that the money so charged would not be used to purchase "non-filing insurance" when the charge was imposed on plaintiffs, but rather the money was used to compensate the defendant creditors in event of the plaintiff/debtor's default or other credit loss.

142. As part of and in implementation of the aforesaid scheme to defraud, combination and conspiracy, during the course of the transaction with each plaintiff as heretofore described, the defendant creditors, in furtherance of the scheme and with the knowledge, consent and participation of each defendant insurance company, and as agreed by and between the co-conspirator defendant creditors and defendant insurance companies nationwide, uniformly represented in writing to each plaintiff, whether expressly or by implication, as part of uniform, written, pre-printed contract documents, that the "non-filing insurance" charge imposed on plaintiffs as part of the "amount financed" would be used to purchase "non-filing insurance."

143. The said uniform representation, made in writing as part of the said written contracts or documents, was false and each creditor and insurance company knew it was false. Each creditor and each insurance company knew that the charge imposed on plaintiffs for purported "non-filing insurance" would not be not used to purchase "non-filing insurance" as uniformly represented to plaintiffs as part of the written contracts and documents, but rather that the money would be used to compensate the defendant creditors in event of the plaintiff/debtor's default or other credit loss.

144. With said knowledge, and in conformance with and furtherance of the nationwide conspiracy and combination between these defendants and other conspiring creditors and insurance companies, the creditors, with the knowledge, consent and participation of the defendant insurance companies, charged each plaintiff for "non-filing insurance" by means of uniform, written, pre-printed contracts and documents knowing that the money so charged would not be used to purchase "non-filing insurance" and knowing that the said charge was fraudulent.

145. Each named plaintiff and each member of the class is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

146. Pursuant to *United States v. Hartley*, 678 F.2d 968 (11th Cir. 1982), certain insurance companies, to-wit: Wesco, American Centennial and WPCIC, which are named as defendants, each separately constitute an "enterprise" as to the defendant creditors associated therewith, within the meaning of 18 U.S.C. §§ 1961(4) and 1964(c), each of which was engaged in activities which affect or affected interstate commerce during the relevant times.

147. Each said insurance company enterprise, or the subsidiaries of the said insurance company enterprise, provided "non-filing insurance" to the defendant creditors associated therewith during part or all of the class period in one or more states of the United States, or was otherwise involved in the "non-filing insurance" programs of the defendant creditors associated therewith.

148. Each said insurance company enterprise is a duly formed, legal entity, governed by officers and a board of directors, with a continuing existence, whose existence is separate and apart from the pattern of racketeering activity.

149. Each defendant (including those defendants identified as the enterprise) is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

150. Each of the defendant creditors (including parent corporations) identified above and defendant insurance companies identified above was

associated with one or more of the said enterprises, and did conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise in relationship to the class through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(b), 1961(5) and 1962(c) as heretofore alleged, to-wit:

A. Multiple instances of mail fraud in violation of 18 U.S.C. §§ 2, 1341; and

B. Multiple instances of interstate transportation of fraudulently obtained money (transportation fraud) in violation of 18 U.S.C. §§ 2, 2314.

151. The aforesaid pattern of racketeering activity by the defendant creditors is related, directly or indirectly, to the conduct of the affairs of the enterprise or enterprises with which each defendant creditor is associated in that the heretofore described scheme regarding "non-filing insurance" regularly and repeatedly used the facilities and services of the enterprise and could not be accomplished without the participation of both the defendant creditors and insurance companies as herein alleged. Both the creditors and insurance companies also profit and benefit from the scheme and have an economic interest in the perpetuation and growth of the "non-filing insurance" scheme.

152. Each class member suffered injury to his property, within the meaning of 18 U.S.C. § 1964(c), by reason of the violation of 18 U.S.C. § 1962(c) committed by the defendants as heretofore alleged.

153. The defendants have been unjustly enriched at the expense of class members by the imposition of charges for and the collection of the said charges for "non-filing insurance" as herein alleged.

154. The scheme and artifice to defraud, the pattern of racketeering activity and the unlawful association of the defendants in furtherance of the scheme and the acts of racketeering are continuing and ongoing and, without the injunction and other judgments and orders of this Court, will likely continue into the future to the economic detriment of the members of the plaintiff class, thus posing the threat of continued criminal activity and thereby making appropriate final declaratory, equitable and injunctive relief.

WHEREFORE, plaintiffs demand judgment against all the defendant creditors, namely Beneficial Corporation, Beneficial Management Corporation of America, and defendant insurance companies, namely Beneficial Insurance Group, Inc., Beneficial Insurance Agency of Nevada, Wesco Insurance Company, American Centennial Insurance Company and Wilmington Property and Casualty

Insurance Company, pursuant to 18 U.S.C. § 1964 and/or 28 U.S.C. §§ 2201 and 2202, as follows:

A. On behalf of the named plaintiff and the putative class:

1. For the Court's judgment or declaratory judgment that:

a. The "non-filing insurance" at issue in this action, under the practices employed by the defendants and with regard to the transactions involved in this litigation, is not "non-filing insurance" but rather is used to compensate the defendant creditors in the event of the plaintiff/debtor's default or other credit loss;

b. Charges for "non-filing insurance" may not be imposed as part of the "amount financed" under the practices employed by the defendants with regard to the type transactions involved in this litigation;

c. The defendants' conduct evidences a corporate policy of the defendants to disregard the rights of the named plaintiffs and putative class members and to engage in a pattern and practice of unlawful conduct as part of their normal business operations, a pattern and practice which has resulted in economic damage to the named plaintiffs and putative class and will continue to damage the named plaintiffs and putative class members

who are future customers of the defendants with regard to the type transactions involved in this litigation; and

d. The defendants' conduct violates 18 U.S.C. § 1962(c).

2. Under and pursuant to the inherent equitable powers of the Court that are available for the proper and complete exercise of its jurisdiction, 18 U.S.C. § 1964, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and/or Rules 64 and 65, Fed.R.Civ.P., for a permanent injunction prohibiting charges for and the sale of "non-filing insurance" as part of the "amount financed" in the United States under the practices employed by the defendants with regard to the type transactions involved in this litigation, and for a judgment, declaratory judgment, mandatory injunction and/or equitable disgorgement requiring the defendants and any others whose presence is necessary to afford the named plaintiffs and the putative class full and complete relief to make restitution, an accounting and disgorgement to the named plaintiffs and putative class members in the form of the return of all interest on the "non-filing insurance" charge imposed on each named plaintiff and putative class member, together with interest thereon, costs and expenses and reasonable attorneys' fees;

3. For such other further necessary, proper and appropriate equitable or declaratory relief as may be proper in the circumstances, including the establishment of a constructive trust and/or ordering an equitable accounting.

B. On behalf of the named plaintiff and the putative class:

1. For an award of actual damages equal to the amount of interest charged on the "non-filing insurance" fee or charge imposed on each member of each said class, together with interest thereon, and treble damages with regard to said amounts, for the defendants' violation of 18 U.S.C. § 1962(d);

2. For appropriate prejudgment interest, expenses, and reasonable attorneys' fees.

# RICO CONSPIRACY COUNT TWO

**VIOLATION OF 18 U.S.C. § 1962(d)**
**PLEAD IN THE ALTERNATIVE**
**ALL DEFENDANTS**

155. Plaintiffs reallege and incorporate by reference herein each and every material allegation of this complaint.

156. The RICO Count Conspiracy Two (Alternative) is brought on behalf of the class against all defendants identified above (creditors and insurance companies).

157. As part of the heretofore alleged scheme, the defendant creditors identified above and defendant insurance companies identified above, alone and together with each other, their subsidiary and affiliate corporations, and other unnamed co-conspirators, determined and agreed to impose on plaintiffs a fraudulent "non-filing insurance" charge as part of the "amount financed" by means of uniform, written, pre-printed contracts and documents under the circumstances herein described and alleged, and agreed to accept assignment of transactions knowing that plaintiffs in those assigned transactions had been charged a fraudulent "non-filing insurance" fee as part of the "amount financed" under the circumstances herein described and alleged.

158. The "non-filing insurance" charge imposed on plaintiffs as part of the "amount financed" was not used to purchase "non-filing insurance" and the defendants knew that the money so charged would not be used to purchase "non-filing insurance" when the charge was imposed on plaintiffs, but rather the money was used to compensate the defendant creditors in event of the plaintiff/debtor's default or other credit loss.

159. As part of and in implementation of the aforesaid scheme to defraud, combination and conspiracy, during the course of the transaction with each plaintiff as heretofore described, the defendant creditors, in furtherance of the scheme and with the knowledge, consent and participation of each defendant insurance company, and as agreed by and between the co-conspirator defendant creditors and defendant insurance companies nationwide, uniformly represented in writing to each plaintiff, whether expressly or by implication, as part of uniform, written, pre-printed contract documents, that the "non-filing insurance" charge imposed on plaintiffs as part of the "amount financed" would be used to purchase "non-filing insurance."

160. The said uniform representation, made in writing as part of the said written contracts or documents, was false and each creditor and insurance

company knew it was false. Each creditor and each insurance company knew that the charge imposed on plaintiffs for purported "non-filing insurance" would not be not used to purchase "non-filing insurance" as uniformly represented to plaintiffs as part of the written contracts and documents, but rather that the money would be used to compensate the defendant creditors in event of the plaintiff/debtor's default or other credit loss.

161. With said knowledge, and in conformance with and furtherance of the nationwide conspiracy and combination between these defendants and other conspiring creditors and insurance companies, the creditors, with the knowledge, consent and participation of the defendant insurance companies, charged each plaintiff for "non-filing insurance" as part of the "amount financed" by means of uniform, written, pre-printed contracts and documents knowing that the money so charged would not be used to purchase "non-filing insurance" and knowing that the said charge was fraudulent.

162. Each named plaintiff and each member of the class is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

163. Pursuant to *United States v. Hartley*, 678 F.2d 968 (11th Cir. 1982), certain insurance companies, to-wit: Wesco, American Centennial and WPCIC,

which are named as defendants, each separately constitute an "enterprise" as to the defendant creditors associated therewith, within the meaning of 18 U.S.C. §§ 1961(4) and 1964(c), each of which was engaged in activities which affect or affected interstate commerce during the relevant times.

164. Each said insurance company enterprise, or the subsidiaries of the said insurance company enterprise, provided "non-filing insurance" to the defendant creditors associated therewith during part or all of the class period in one or more states of the United States, or was otherwise involved in the "non-filing insurance" programs of the defendant creditors associated therewith.

165. Each said insurance company enterprise is a duly formed, legal entity, governed by officers and a board of directors, with a continuing existence, whose existence is separate and apart from the pattern of racketeering activity.

166. Each defendant (including those defendants identified as the enterprise) is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

167. Each of the defendant creditors (including parent corporations) identified above and defendant insurance companies identified above was associated with one or more of the enterprises, and conspired within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c), that is, the defendants, their

parent, subsidiary and affiliate corporations, and other creditors and insurance companies nationwide, conspired to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise in relationship to the class through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(b), 1961(5) and 1962(c) as heretofore alleged, to-wit:

A. Multiple instances of mail fraud in violation of 18 U.S.C. §§ 2, 1341; and

B. Multiple instances of interstate transportation of fraudulently obtained money (transportation fraud) in violation of 18 U.S.C. §§ 2, 2314.

168. The defendants agreed to the overall objective of the conspiracy, to-wit: To obtain money from the plaintiffs by means of the fraudulent "non-filing insurance" scheme as heretofore alleged, and committed one or more overt acts in furtherance of the said conspiracy. *Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935 (11th Cir. 1997).

169. The conspiracy to violate 18 U.S.C. § 1962(c) alleged herein is "horizontal" between the different creditors and between the different insurance companies, and "vertical" between the creditors and the particular insurance

company or insurance companies providing "non-filing insurance" to or otherwise involved in the "non-filing insurance" program of each particular creditor.

170. The parent corporations and the subsidiary and affiliate corporations thereof engaged and continue to engage in an "intracorporate conspiracy" to violate 18 U.S.C. § 1962(c) as alleged herein, and by virtue of which intracorporate conspiracy the parent corporations are liable as co-conspirators for the fraudulent activities of their subsidiary and affiliate corporations as herein alleged.

171. Each class member suffered injury to his property, within the meaning of 18 U.S.C. § 1964(c), by reason of the violation of 18 U.S.C. § 1962(d) committed by the defendants as heretofore alleged.

WHEREFORE, plaintiffs demand judgment against all the defendant creditors, namely Beneficial Corporation, Beneficial Management Corporation of America, and defendant insurance companies, namely Beneficial Insurance Group, Inc., Beneficial Insurance Agency of Nevada, Wesco Insurance Company, American Centennial Insurance Company and Wilmington Property and Casualty Insurance Company, pursuant to 18 U.S.C. § 1964 and/or 28 U.S.C. §§ 2201 and 2202, as follows:

A. On behalf of the named plaintiff and the putative class:

1. For the Court's judgment or declaratory judgment that:

a. The "non-filing insurance" at issue in this action, under the practices employed by the defendants and with regard to the transactions involved in this litigation, is not "non-filing insurance" but rather is used to compensate the defendant creditors in the event of the plaintiff/debtor's default or other credit loss;

b. Charges for "non-filing insurance" may not be imposed as part of the "amount financed" under the practices employed by the defendants with regard to the type transactions involved in this litigation;

c. The defendants' conduct evidences a corporate policy of the defendants to disregard the rights of the named plaintiffs and putative class members and to engage in a pattern and practice of unlawful conduct as part of their normal business operations, a pattern and practice which has resulted in economic damage to the named plaintiffs and putative class and will continue to damage the named plaintiffs and putative class members who are future customers of the defendants with regard to the type transactions involved in this litigation; and

d. The defendants' conduct violates 18 U.S.C. § 1962(d).

2. Under and pursuant to the inherent equitable powers of the Court that are available for the proper and complete exercise of its jurisdiction, 18 U.S.C. § 1964, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and/or Rules 64 and 65, Fed.R.Civ.P., for a permanent injunction prohibiting charges for and the sale of "non-filing insurance" as part of the "amount financed" in the United States under the practices employed by the defendants with regard to the type transactions involved in this litigation, and for a judgment, declaratory judgment, mandatory injunction and/or equitable disgorgement requiring the defendants and any others whose presence is necessary to afford the named plaintiffs and the putative class full and complete relief to make restitution, an accounting and disgorgement to the named plaintiffs and putative class members in the form of the return of all interest on the "non-filing insurance" charge imposed on each named plaintiff and putative class member, together with interest thereon, costs and expenses and reasonable attorneys' fees;

3. For such other further necessary, proper and appropriate equitable or declaratory relief as may be proper in the circumstances,

including the establishment of a constructive trust and/or ordering an equitable accounting.

B. On behalf of the named plaintiff and the putative class:

1. For an award of actual damages equal to the amount of interest charged on the "non-filing insurance" fee or charge imposed on each member of each said class, together with interest thereon, and treble damages with regard to said amounts, for the defendants' violation of 18 U.S.C. § 1962(d);

2. For appropriate prejudgment interest, expenses, and reasonable attorneys' fees.

## RICO COUNT THREE
### VIOLATION OF 18 U.S.C. § 1962(c)
### PLEAD IN THE ALTERNATIVE
### DEFENDANT CREDITORS ONLY

172. Plaintiffs reallege and incorporate by reference herein each and every material allegation of this complaint.

173. The RICO Count Three (Alternative) is brought on behalf of the class against the defendant creditors only, namely Beneficial Corporation, BMCA and Beneficial Florida.

174. As part of the heretofore alleged scheme, the defendant creditors identified above, alone and together with each other, their subsidiary and affiliate corporations, and other unnamed co-conspirators (including but not limited to insurance companies), determined and agreed to impose on plaintiffs a fraudulent "non-filing insurance" charge by means of uniform, written, pre-printed contracts and documents under the circumstances herein described and alleged, and agreed to accept assignment of transactions from other creditors knowing that plaintiffs in those assigned transactions had been charged a fraudulent "non-filing insurance" fee under the circumstances herein described and alleged.

175. The so-called "non-filing insurance" at issue in this case is not insurance and, at the time said charge was imposed, the defendants knew that the so-called "non-filing insurance" was not insurance. Instead of being insurance, the said "non-filing insurance" charge is nothing more than a fraudulent charge imposed on the plaintiffs.

176. Alternatively, the so-called "non-filing insurance" is not valid "non-filing insurance" within the meaning of 15 U.S.C. § 1605(d)(2) because the policies do not adhere to the mandate of 15 U.S.C. § 1605(d)(2) in that the charges are imposed and the money is used in violation and for a purpose other

than that prescribed by 15 U.S.C. § 1605(d)(2), which authorizes charges for "non-filing insurance" only when the charge is a "premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction" which statutory requirement was violated and not complied with by the defendants. Instead of being valid "non-filing insurance," the said charge is nothing more than a fraudulent charge imposed on plaintiffs.

177. As part of and in implementation of the aforesaid scheme to defraud, combination and conspiracy, during the course of the transaction with each plaintiff as heretofore described, the defendant creditors, in furtherance of the scheme and with the knowledge, consent and participation of each insurance company, and as agreed by and between the co-conspirator defendant creditors and insurance companies nationwide, uniformly represented in writing to each plaintiff, whether expressly or by implication, as part of uniform, written, pre-printed contract documents, that the "non-filing insurance" charge imposed on plaintiffs would be used to purchase "non-filing insurance."

178. The said uniform representation, made in writing as part of the said written contracts or documents, was false and each creditor and insurance

company knew it was false. Each creditor and each insurance company knew that the charge imposed on plaintiffs for purported "non-filing insurance" would not be not used to purchase "non-filing insurance" as uniformly represented to plaintiffs as part of the written contracts and documents, but rather that the money would be sent to the insurance company under the guise of purchasing "non-filing insurance" in conformance with the law; however, no "non-filing insurance" was purchased and, pursuant to a pre-arranged agreement, the majority of said money was returned to the defendant creditor by the insurance company.

179. With said knowledge, and in conformance with and furtherance of the nationwide conspiracy and combination between these defendants and other conspiring creditors and insurance companies, the creditors, with the knowledge, consent and participation of the insurance companies, charged each plaintiff for "non-filing insurance" by means of uniform, written, pre-printed contracts and documents knowing that the money so charged would not be used to purchase "non-filing insurance" and knowing that the said charge was fraudulent.

180. Each named plaintiff and each member of the class is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

181. Certain insurance companies, to-wit: Wesco, American Centennial and WPCIC, which are **not** named as defendants in this Alternative Count, each separately constitute an "enterprise" as to the creditor defendants associated therewith, within the meaning of 18 U.S.C. §§ 1961(4) and 1964(c), each of which was engaged in activities which affect or affected interstate commerce during the relevant times.

182. Each said insurance company enterprise, or the subsidiaries of the said insurance company enterprise, provided "non-filing insurance" to the defendant creditors associated therewith during part or all of the class period in one or more states of the United States, or was otherwise involved in the "non-filing insurance" programs of the defendant creditors associated therewith.

183. Each said insurance company enterprise is a duly formed, legal entity, governed by officers and a board of directors, with a continuing existence, whose existence is separate and apart from the pattern of racketeering activity.

184. Each defendant creditor is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

185. Each of the defendant creditors (including parent corporations) identified above was associated with one or more of the said enterprises, and did

conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise or enterprises in relationship to the class through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(b), 1961(5) and 1962(c) as heretofore alleged, to-wit:

A. Multiple instances of mail fraud in violation of 18 U.S.C. §§ 2, 1341; and

B. Multiple instances of interstate transportation of fraudulently obtained money (transportation fraud) in violation of 18 U.S.C. §§ 2, 2314.

186. The aforesaid pattern of racketeering activity by the defendant creditors is related, directly or indirectly, to the conduct of the affairs of the enterprise or enterprises with which each defendant creditor is associated in that the heretofore described scheme regarding "non-filing insurance" regularly and repeatedly used the facilities and services of the enterprise or enterprises and could not be accomplished without the participation of both the creditors and insurance companies as herein alleged. Both the creditors and insurance companies also profit and benefit from the scheme and have an economic interest in the perpetuation and growth of the "non-filing insurance" scheme.

187. Each class member suffered injury to his property, within the meaning of 18 U.S.C. § 1964(c), by reason of the violation of 18 U.S.C. § 1962(c) committed by the defendants as heretofore alleged.

188. The defendants have been unjustly enriched at the expense of class members by the imposition of charges for and the collection of the said charges for "non-filing insurance" as herein alleged.

189. The scheme and artifice to defraud, the pattern of racketeering activity and the unlawful association of the defendants in furtherance of the scheme and the acts of racketeering are continuing and ongoing and, without the injunction and other judgments and orders of this Court, will likely continue into the future to the economic detriment of the members of the plaintiff class, thus posing the threat of continued criminal activity and thereby making appropriate final declaratory, equitable and injunctive relief.

WHEREFORE, plaintiffs demand judgment against all the defendant creditors, namely Beneficial Corporation, Beneficial Management Corporation of America and Beneficial Florida, Inc., pursuant to 18 U.S.C. § 1964 and/or 28 U.S.C. §§ 2201 and 2202, as follows:

A. On behalf of the named plaintiff and the putative class:

1. For the Court's judgment or declaratory judgment that:

a. The "non-filing insurance" at issue in this action, under the practices employed by the defendants as alleged and with regard to the type transactions involved in this litigation, is not insurance or, alternatively, is not "non-filing insurance";

b. Charges for "non-filing insurance" may not be imposed under the practices employed by the defendants with regard to the type transactions involved in this litigation in the future;

c. The defendants' conduct evidences a corporate policy of the defendants to disregard the rights of the named plaintiffs and putative class members and to engage in a pattern and practice of unlawful conduct as part of their normal business operations, a pattern and practice which has resulted in economic damage to the named plaintiffs and putative class and will continue to damage the named plaintiffs and putative class members who are future customers of the defendants with regard to the type transactions involved in this litigation; and

d. The defendants' conduct violates 18 U.S.C. § 1962(c).

2. Under and pursuant to the inherent equitable powers of the Court that are available for the proper and complete exercise of its jurisdiction, 18 U.S.C. § 1964, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and/or Rules 64 and 65, Fed.R.Civ.P., for a permanent injunction prohibiting charges for and the sale of "non-filing insurance" in the United States under the practices employed by the defendants with regard to the type transactions involved in this litigation, and for a judgment, declaratory judgment, mandatory injunction and/or equitable disgorgement requiring the defendants and any others whose presence is necessary to afford the named plaintiffs and the putative class full and complete relief to make restitution, an accounting and disgorgement to the named plaintiffs and putative class members in the form of the return of the entire "non-filing insurance" charge imposed on each named plaintiff and putative class member, together with interest thereon, costs and expenses and reasonable attorneys' fees;

3. For such other further necessary, proper and appropriate equitable or declaratory relief as may be proper in the circumstances,

including the establishment of a constructive trust and/or ordering an equitable accounting.

B. On behalf of the named plaintiff and the putative class:

1. For an award of actual damages equal to the amount of the "non-filing insurance" fee or charge imposed on each member of each said class, together with interest thereon, and treble damages with regard to said amounts, for the defendants' violation of 18 U.S.C. § 1962(c);

2. For appropriate prejudgment interest, expenses, and reasonable attorneys' fees.

## RICO CONSPIRACY COUNT THREE

### VIOLATION OF 18 U.S.C. § 1962(d)
### PLEAD IN THE ALTERNATIVE
### DEFENDANT CREDITORS ONLY

190. Plaintiffs reallege and incorporate by reference herein each and every material allegation of this complaint.

191. The RICO Conspiracy Count Three (Alternative) is brought on behalf of the class against the defendant creditors only, namely Beneficial Corporation, BMCA and Beneficial Florida.

192. As part of the heretofore alleged scheme, the defendant creditors identified above, alone and together with each other, their subsidiary and affiliate corporations, and other unnamed co-conspirators, determined and agreed to impose on plaintiffs a fraudulent "non-filing insurance" charge by means of uniform, written, pre-printed contracts and documents under the circumstances herein described and alleged, and agreed to accept assignment of transactions knowing that plaintiffs in those assigned transactions had been charged a fraudulent "non-filing insurance" fee under the circumstances herein described and alleged.

193. The so-called "non-filing insurance" at issue in this case is not insurance and, at the time said charge was imposed, the defendants knew that the so-called "non-filing insurance" was not insurance. Instead of being insurance, the said "non-filing insurance" charge is nothing more than a fraudulent charge imposed on the plaintiffs.

194. Alternatively, the so-called "non-filing insurance" is not valid "non-filing insurance" within the meaning of 15 U.S.C. § 1605(d)(2) because the policies do not adhere to the mandate of 15 U.S.C. § 1605(d)(2) in that the charges are imposed and the money is used in violation and for a purpose other than that prescribed by 15 U.S.C. § 1605(d)(2), which authorizes charges for "non-filing insurance" only when the charge is a "premium payable for any insurance in lieu of perfecting any security interest otherwise required by the creditor in connection with the transaction" which statutory requirement was violated and not complied with by the defendants. Instead of being valid "non-filing insurance," the said charge is nothing more than a fraudulent charge imposed on the plaintiffs.

195. As part of and in implementation of the aforesaid scheme to defraud, combination and conspiracy, during the course of the transaction with each plaintiff as heretofore described, the defendant creditors, in furtherance of the scheme and with the knowledge, consent and participation of each insurance company, and as agreed by and between the co-conspirator defendant creditors and insurance companies nationwide, uniformly represented in writing to each plaintiff, whether expressly or by implication, as part of uniform, written, pre-

printed contract documents, that the "non-filing insurance" charge imposed on plaintiffs would be used to purchase "non-filing insurance."

196. The said uniform representation, made in writing as part of the said written contracts or documents, was false and each creditor and insurance company knew it was false. Each creditor and each insurance company knew that the charge imposed on plaintiffs for purported "non-filing insurance" would not be not used to purchase "non-filing insurance" as uniformly represented to plaintiffs as part of the written contracts and documents, but rather that the money would be sent to the insurance company under the guise of purchasing "non-filing insurance" in conformance with the law; however, no "non-filing insurance" was purchased and, pursuant to a pre-arranged agreement, the majority of said money was returned to the defendant creditor by the insurance company.

197. With said knowledge, and in conformance with and furtherance of the nationwide conspiracy and combination between these defendants and other conspiring creditors and insurance companies, the creditors, with the knowledge, consent and participation of the insurance companies, charged each plaintiff for "non-filing insurance" by means of uniform, written, pre-printed contracts and

documents knowing that the money so charged would not be used to purchase "non-filing insurance" and knowing that the said charge was fraudulent.

198. Each named plaintiff and each member of the class is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

199. Certain insurance companies, namely, Wesco, American Centennial and WPCIC, which are **not** named as defendants in this Alternative Conspiracy Count, each separately constitute an "enterprise" as to the creditor defendants associated therewith, within the meaning of 18 U.S.C. §§ 1961(4) and 1964(c), each of which was engaged in activities which affect or affected interstate commerce during the relevant times.

200. Each said insurance company enterprise, or the subsidiaries of the said insurance company enterprise, provided "non-filing insurance" to the defendant creditors associated therewith during part or all of the class period in one or more states of the United States, or was otherwise involved in the "non-filing insurance" programs of the defendant creditors associated therewith.

201. Each said insurance company enterprise is a duly formed, legal entity, governed by officers and a board of directors, with a continuing existence, whose existence is separate and apart from the pattern of racketeering activity.

202. Each defendant creditor is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

203. Each of the defendant creditors (including parent corporations) identified above was associated with one or more of the enterprises identified above, and conspired within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c), that is, the defendants, their parent, subsidiary and affiliate corporations, and other creditors and insurance companies nationwide, conspired to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise in relationship to the class through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(b), 1961(5) and 1962(c) as heretofore alleged, to-wit:

A. Multiple instances of mail fraud in violation of 18 U.S.C. §§ 2, 1341; and

B. Multiple instances of interstate transportation of fraudulently obtained money (transportation fraud) in violation of 18 U.S.C. §§ 2, 2314.

204. The defendants agreed to the overall objective of the conspiracy, to-wit: To obtain money from the plaintiffs by means of the fraudulent "non-filing insurance" scheme as heretofore alleged, and committed one or more overt acts in

furtherance of the said conspiracy. *Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935 (11th Cir. 1997).

205. The conspiracy to violate 18 U.S.C. § 1962(c) alleged herein is "horizontal" between the different creditors and between the different insurance companies, and "vertical" between the creditors and the particular insurance company or insurance companies providing "non-filing insurance" to or otherwise involved in the "non-filing insurance" program of each particular creditor.

206. The parent corporations and the subsidiary and affiliate corporations thereof engaged and continue to engage in an "intracorporate conspiracy" to violate 18 U.S.C. § 1962(c) as alleged herein, and by virtue of which intracorporate conspiracy the parent corporations are liable as co-conspirators for the fraudulent activities of their subsidiary and affiliate corporations as herein alleged.

207. Each class member suffered injury to his property, within the meaning of 18 U.S.C. § 1964(c), by reason of the violation of 18 U.S.C. § 1962(d) committed by the defendants as heretofore alleged.

WHEREFORE, plaintiffs demand judgment against all the defendant creditors, namely Beneficial Corporation, Beneficial Management Corporation of

America and Beneficial Florida, Inc., pursuant to 18 U.S.C. § 1964 and/or 28 U.S.C. §§ 2201 and 2202, as follows:

A. On behalf of the named plaintiff and the putative class:

1. For the Court's judgment or declaratory judgment that:

a. The "non-filing insurance" at issue in this action, under the practices employed by the defendants as alleged and with regard to the type transactions involved in this litigation, is not insurance or, alternatively, is not "non-filing insurance";

b. Charges for "non-filing insurance" may not be imposed under the practices employed by the defendants with regard to the type transactions involved in this litigation in the future;

c. The defendants' conduct evidences a corporate policy of the defendants to disregard the rights of the named plaintiffs and putative class members and to engage in a pattern and practice of unlawful conduct as part of their normal business operations, a pattern and practice which has resulted in economic damage to the named plaintiffs and putative class and will continue to damage the named plaintiffs and putative class members

who are future customers of the defendants with regard to the type transactions involved in this litigation; and

d. The defendants' conduct violates 18 U.S.C. § 1962(d).

2. Under and pursuant to the inherent equitable powers of the Court that are available for the proper and complete exercise of its jurisdiction, 18 U.S.C. § 1964, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and/or Rules 64 and 65, Fed.R.Civ.P., for a permanent injunction prohibiting charges for and the sale of "non-filing insurance" in the United States under the practices employed by the defendants with regard to the type transactions involved in this litigation, and for a judgment, declaratory judgment, mandatory injunction and/or equitable disgorgement requiring the defendants and any others whose presence is necessary to afford the named plaintiffs and the putative class full and complete relief to make restitution, an accounting and disgorgement to the named plaintiffs and putative class members in the form of the return of the entire "non-filing insurance" charge imposed on each named plaintiff and putative class member, together with interest thereon, costs and expenses and reasonable attorneys' fees;

3. For such other further necessary, proper and appropriate equitable or declaratory relief as may be proper in the circumstances, including the establishment of a constructive trust and/or ordering an equitable accounting.

B. On behalf of the named plaintiff and the putative class:

1. For an award of actual damages equal to the amount of the "non-filing insurance" fee or charge imposed on each member of each said class, together with interest thereon, and treble damages with regard to said amounts, for the defendants' violation of 18 U.S.C. § 1962(d);

2. For appropriate prejudgment interest, expenses, and reasonable attorneys' fees.

## RICO COUNT FOUR

### VIOLATION OF 18 U.S.C. § 1962(c)
### PLEAD IN THE ALTERNATIVE
### DEFENDANT CREDITORS ONLY

208. Plaintiffs reallege and incorporate by reference herein each and every material allegation of this complaint.

209. The RICO Count Four (Alternative) is brought on behalf of the class against the defendant creditors only, to-wit: Beneficial Corporation, BMCA and Beneficial Florida.

210. As part of the heretofore alleged scheme, the defendant creditors identified above, alone and together with each other, their subsidiary and affiliate corporations, and other unnamed co-conspirators, determined and agreed to impose on plaintiffs a fraudulent "non-filing insurance" charge as part of the "amount financed" by means of uniform, written, pre-printed contracts and documents under the circumstances herein described and alleged, and agreed to accept assignment of transactions knowing that plaintiffs in those assigned transactions had been charged a fraudulent "non-filing insurance" fee under the circumstances herein described and alleged.

211. The "non-filing insurance" charge imposed on plaintiffs as part of the "amount financed" was not used to purchase "non-filing insurance" and the defendants knew that the money so charged would not be used to purchase "non-filing insurance" when the charge was imposed on plaintiffs, but rather the money was used to compensate the defendant creditors in event of the plaintiff/debtor's default or other credit loss.

212. As part of and in implementation of the aforesaid scheme to defraud, combination and conspiracy, during the course of the transaction with each plaintiff as heretofore described, the defendant creditors, in furtherance of the scheme and with the knowledge, consent and participation of each insurance company, and as agreed by and between the co-conspirator defendant creditors and insurance companies nationwide, uniformly represented in writing to each plaintiff, whether expressly or by implication, as part of uniform, written, pre-printed contract documents, that the "non-filing insurance" charge imposed on plaintiffs as part of the "amount financed" would be used to purchase "non-filing insurance."

213. The said uniform representation, made in writing as part of the said written contracts or documents, was false and each creditor and insurance company knew it was false. Each creditor and each insurance company knew that the charge imposed on plaintiffs for purported "non-filing insurance" would not be not used to purchase "non-filing insurance" as uniformly represented to plaintiffs as part of the written contracts and documents, but rather that the money would be used to compensate the defendant creditors in event of the plaintiff/debtor's default or other credit loss.

214. With said knowledge, and in conformance with and furtherance of the nationwide conspiracy and combination between these defendants and other conspiring creditors and insurance companies, the creditors, with the knowledge, consent and participation of the insurance companies, charged each plaintiff for "non-filing insurance" by means of uniform, written, pre-printed contracts and documents knowing that the money so charged would not be used to purchase "non-filing insurance" and knowing that the said charge was fraudulent.

215. Each named plaintiff and each member of the class is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

216. Certain insurance companies, to-wit: Wesco, American Centennial and WPCIC, which are **not** named as defendants in this Alternative Count, each separately constitute an "enterprise" as to the particular defendant creditors associated therewith, within the meaning of 18 U.S.C. §§ 1961(4) and 1964(c), each of which was engaged in activities which affect or affected interstate commerce during the relevant times.

217. Each said insurance company enterprise, or the subsidiaries of the said insurance company enterprise, provided "non-filing insurance" to the defendant creditors associated therewith during part or all of the class period in

one or more states of the United States, or was otherwise involved in the "non-filing insurance" programs of the defendant creditors associated therewith.

218. Each said insurance company enterprise is a duly formed, legal entity, governed by officers and a board of directors, with a continuing existence, whose existence is separate and apart from the pattern of racketeering activity.

219. Each defendant creditor is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

220. Each of the defendant creditors (including parent corporations) identified above was associated with one or more of the said enterprises, and did conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise in relationship to the class through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(b), 1961(5) and 1962(c) as heretofore alleged, to-wit:

A. Multiple instances of mail fraud in violation of 18 U.S.C. §§ 2, 1341; and

B. Multiple instances of interstate transportation of fraudulently obtained money (transportation fraud) in violation of 18 U.S.C. §§ 2, 2314.

221. The aforesaid pattern of racketeering activity by the defendant creditors is related, directly or indirectly, to the conduct of the affairs of the enterprise or enterprises with which each defendant creditor is associated in that the heretofore described scheme regarding "non-filing insurance" regularly and repeatedly used the facilities and services of the enterprise and could not be accomplished without the participation of both the defendant creditors and insurance companies as herein alleged. Both the creditors and insurance companies also profit and benefit from the scheme and have an economic interest in the perpetuation and growth of the "non-filing insurance" scheme.

222. Each class member suffered injury to his property, within the meaning of 18 U.S.C. § 1964(c), by reason of the violation of 18 U.S.C. § 1962(c) committed by the defendants as heretofore alleged.

223. The defendants have been unjustly enriched at the expense of class members by the imposition of charges for and the collection of the said charges for "non-filing insurance" as herein alleged.

224. The scheme and artifice to defraud, the pattern of racketeering activity and the unlawful association of the defendants in furtherance of the scheme and the acts of racketeering are continuing and ongoing and, without the

injunction and other judgments and orders of this Court, will likely continue into the future to the economic detriment of the members of the plaintiff class, thus posing the threat of continued criminal activity and thereby making appropriate final declaratory, equitable and injunctive relief.

WHEREFORE, plaintiffs demand judgment against all the defendant creditors, namely, Beneficial Corporation, Beneficial Management Corporation of America, and Beneficial Florida, Inc., pursuant to 18 U.S.C. § 1964 and/or 28 U.S.C. §§ 2201 and 2202, as follows:

A. On behalf of the named plaintiff and the putative class:

1. For the Court's judgment or declaratory judgment that:

a. The "non-filing insurance" at issue in this action, under the practices employed by the defendants and with regard to the transactions involved in this litigation, is not "non-filing insurance" but rather is used to compensate the defendant creditors in the event of the plaintiff/debtor's default or other credit loss;

b. Charges for "non-filing insurance" may not be imposed as part of the "amount financed" under the practices employed by the defendants with regard to the type transactions involved in this litigation;

c. The defendants' conduct evidences a corporate policy of the defendants to disregard the rights of the named plaintiffs and putative class members and to engage in a pattern and practice of unlawful conduct as part of their normal business operations, a pattern and practice which has resulted in economic damage to the named plaintiffs and putative class and will continue to damage the named plaintiffs and putative class members who are future customers of the defendants with regard to the type transactions involved in this litigation; and

d. The defendants' conduct violates 18 U.S.C. § 1962(c).

2. Under and pursuant to the inherent equitable powers of the Court that are available for the proper and complete exercise of its jurisdiction, 18 U.S.C. § 1964, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and/or Rules 64 and 65, Fed.R.Civ.P., for a permanent injunction prohibiting charges for and the sale of "non-filing insurance" as part of the "amount financed" in the United States under the practices employed by the defendants with regard to the type transactions involved in this litigation, and for a judgment, declaratory judgment, mandatory injunction and/or equitable disgorgement requiring the defendants and any others whose

presence is necessary to afford the named plaintiffs and the putative class full and complete relief to make restitution, an accounting and disgorgement to the named plaintiffs and putative class members in the form of the return of all interest on the "non-filing insurance" charge imposed on each named plaintiff and putative class member, together with interest thereon, costs and expenses and reasonable attorneys' fees;

3. For such other further necessary, proper and appropriate equitable or declaratory relief as may be proper in the circumstances, including the establishment of a constructive trust and/or ordering an equitable accounting.

B. On behalf of the named plaintiff and the putative class:

1. For an award of actual damages equal to the amount of interest charged on the "non-filing insurance" fee or charge imposed on each member of each said class, together with interest thereon, and treble damages with regard to said amounts, for the defendants' violation of 18 U.S.C. § 1962(c);

2. For appropriate prejudgment interest, expenses, and reasonable attorneys' fees.

# RICO CONSPIRACY COUNT FOUR

**VIOLATION OF 18 U.S.C. § 1962(d)**
**PLEAD IN THE ALTERNATIVE**
**DEFENDANT CREDITORS ONLY**

225. Plaintiffs reallege and incorporate by reference herein each and every material allegation of this complaint.

226. The RICO Count Conspiracy Four (Alternative) is brought on behalf of the class against the defendant creditors only, to-wit: Beneficial Corporation, BMCA, and Beneficial Florida, Inc.

227. As part of the heretofore alleged scheme, the defendant creditors identified above, alone and together with each other, their subsidiary and affiliate corporations, and other unnamed co-conspirators, determined and agreed to impose on plaintiffs a fraudulent "non-filing insurance" charge by means of uniform, written, pre-printed contracts and documents under the circumstances herein described and alleged, and agreed to accept assignment of transactions knowing that plaintiffs in those assigned transactions had been charged a fraudulent "non-filing insurance" fee under the circumstances herein described and alleged.

228. The "non-filing insurance" charge imposed on plaintiffs as part of the "amount financed" was not used to purchase "non-filing insurance" and the defendants knew that the money so charged would not be used to purchase "non-filing insurance" when the charge was imposed on plaintiffs, but rather the money was used to compensate the defendant creditors in event of the plaintiff/debtor's default or other credit loss.

229. As part of and in implementation of the aforesaid scheme to defraud, combination and conspiracy, during the course of the transaction with each plaintiff as heretofore described, the defendant creditors, in furtherance of the scheme and with the knowledge, consent and participation of each insurance company, and as agreed by and between the co-conspirator defendant creditors and insurance companies nationwide, uniformly represented in writing to each plaintiff, whether expressly or by implication, as part of uniform, written, pre-printed contract documents, that the "non-filing insurance" charge imposed on plaintiffs as part of the "amount financed" would be used to purchase "non-filing insurance."

230. The said uniform representation, made in writing as part of the said written contracts or documents, was false and each creditor and insurance

company knew it was false. Each creditor and each insurance company knew that the charge imposed on plaintiffs for purported "non-filing insurance" would not be not used to purchase "non-filing insurance" as uniformly represented to plaintiffs as part of the written contracts and documents, but rather that the money would be used to compensate the defendant creditors in event of the plaintiff/debtor's default or other credit loss.

231. With said knowledge, and in conformance with and furtherance of the nationwide conspiracy and combination between these defendants and other conspiring creditors and insurance companies, the creditors, with the knowledge, consent and participation of the insurance companies, charged each plaintiff for "non-filing insurance" as part of the "amount financed" by means of uniform, written, pre-printed contracts and documents knowing that the money so charged would not be used to purchase "non-filing insurance" and knowing that the said charge was fraudulent.

232. Each named plaintiff and each member of the class is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

233. Certain insurance companies, to-wit: Wesco, American Centennial and WPCIC, which are **not** named as defendants in this Alternative Conspiracy

Count, each separately constitute an "enterprise" as to the defendant creditors associated therewith, within the meaning of 18 U.S.C. §§ 1961(4) and 1964(c), each of which was engaged in activities which affect or affected interstate commerce during the relevant times.

234. Each said insurance company enterprise, or the subsidiaries of the said insurance company enterprise, provided "non-filing insurance" to the defendant creditors associated therewith during part or all of the class period in one or more states of the United States, or was otherwise involved in the "non-filing insurance" programs of the defendant creditors associated therewith.

235. Each said insurance company enterprise is a duly formed, legal entity, governed by officers and a board of directors, with a continuing existence, whose existence is separate and apart from the pattern of racketeering activity.

236. Each defendant creditor is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

237. Each of the defendant creditors (including parent corporations) identified above was associated with one or more of the said enterprises, and conspired within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c), that is, the defendants, their parent, subsidiary and affiliate corporations,

and other creditors and insurance companies nationwide, conspired to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprise in relationship to the class through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(b), 1961(5) and 1962(c) as heretofore alleged, to-wit:

A. Multiple instances of mail fraud in violation of 18 U.S.C. §§ 2, 1341; and

B. Multiple instances of interstate transportation of fraudulently obtained money (transportation fraud) in violation of 18 U.S.C. §§ 2, 2314.

238. The defendants agreed to the overall objective of the conspiracy, to-wit: To obtain money from the plaintiffs by means of the fraudulent "non-filing insurance" scheme as heretofore alleged, and committed one or more overt acts in furtherance of the said conspiracy. *Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935 (11th Cir. 1997).

239. The conspiracy to violate 18 U.S.C. § 1962(c) alleged herein is "horizontal" between the different creditors and between the different insurance companies, and "vertical" between the creditors and the particular insurance company or insurance companies providing "non-filing insurance" to or otherwise involved in the "non-filing insurance" program of each particular creditor.

240. The parent corporations and the subsidiary and affiliate corporations thereof engaged and continue to engage in an "intracorporate conspiracy" to violate 18 U.S.C. § 1962(c) as alleged herein, and by virtue of which intracorporate conspiracy the parent corporations are liable as co-conspirators for the fraudulent activities of their subsidiary and affiliate corporations as herein alleged.

241. Each class member suffered injury to his property, within the meaning of 18 U.S.C. § 1964(c), by reason of the violation of 18 U.S.C. § 1962(d) committed by the defendants as heretofore alleged.

WHEREFORE, plaintiffs demand judgment against all the defendant creditors only, namely, Beneficial Corporation, Beneficial Management Corporation of America, and Beneficial Florida, Inc., pursuant to 18 U.S.C. § 1964 and/or 28 U.S.C. §§ 2201 and 2202, as follows:

A. On behalf of the named plaintiff and the members of the putative class:

1. For the Court's judgment or declaratory judgment that:

a. The "non-filing insurance" at issue in this action, under the practices employed by the defendants and with regard to the

transactions involved in this litigation, is not "non-filing insurance" but rather is used to compensate the defendant creditors in the event of the plaintiff/debtor's default or other credit loss;

b. Charges for "non-filing insurance" may not be imposed as part of the "amount financed" under the practices employed by the defendants with regard to the type transactions involved in this litigation;

c. The defendants' conduct evidences a corporate policy of the defendants to disregard the rights of the named plaintiffs and putative class members and to engage in a pattern and practice of unlawful conduct as part of their normal business operations, a pattern and practice which has resulted in economic damage to the named plaintiffs and putative class and will continue to damage the named plaintiffs and putative class members who are future customers of the defendants with regard to the type transactions involved in this litigation; and

d. The defendants' conduct violates 18 U.S.C. § 1962(d).

2. Under and pursuant to the inherent equitable powers of the Court that are available for the proper and complete exercise of its jurisdiction, 18 U.S.C. § 1964, 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and/or Rules 64 and 65, Fed.R.Civ.P., for a permanent injunction prohibiting charges for and the sale of "non-filing insurance" as part of the "amount financed" in the United States under the practices employed by the defendants with regard to the type transactions involved in this litigation, and for a judgment, declaratory judgment, mandatory injunction and/or equitable disgorgement requiring the defendants and any others whose presence is necessary to afford the named plaintiffs and the putative class full and complete relief to make restitution, an accounting and disgorgement to the named plaintiffs and putative class members in the form of the return of all interest on the "non-filing insurance" charge imposed on each named plaintiff and putative class member, together with interest thereon, costs and expenses and reasonable attorneys' fees;

3. For such other further necessary, proper and appropriate equitable or declaratory relief as may be proper in the circumstances, including the establishment of a constructive trust and/or ordering an equitable accounting.

B. On behalf of the named plaintiff and the putative class:

1. For an award of actual damages equal to the amount of interest charged on the "non-filing insurance" fee or charge imposed on each member of each said class, together with interest thereon, and treble damages with regard to said amounts, for the defendants' violation of 18 U.S.C. § 1962(d);

2. For appropriate prejudgment interest, expenses, and reasonable attorneys' fees.

## - VI. -

## DECLARATORY JUDGMENT ACT

# COUNT FIVE

### ADDITIONAL RELIEF UNDER THE DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201 AND 2202, APPLICABLE TO ALL COUNTS ALL DEFENDANTS

242. This Count Five specifically and expressly invokes the Court's authority and jurisdiction and seeks the Court's exercise of its discretion under the Declaratory Judgment Act (DJA), 18 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and Rules 64 and 65, Fed.R.Civ.P., to grant plaintiffs additional necessary, proper and appropriate relief as may be proper for the claims and causes of action asserted in all previous counts of this Complaint.

243. Plaintiffs reallege each and every material allegation of this Complaint and incorporate same by reference into this Count Five as if here set out in full.

244. As described and alleged herein, there exists an actual and justiciable controversy between plaintiffs and defendants upon substantial property rights depend.

245. Defendants' wrongful conduct has been continuous and plaintiffs aver that said wrongful conduct is ongoing and will likely continue into the future.

246. Plaintiffs have suffered substantial damage and injury as herein alleged as a direct and proximate result of defendants' wrongful conduct, and will likely suffer additional substantial injury in the future absent this Court's declaratory judgment and injunction. Plaintiffs seek and are entitled to necessary and appropriate declaratory and equitable relief pursuant to 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and Rules 64 and 65, Fed.R.Civ.P.

247. The defendants have been unjustly enriched at the expense of class members by the imposition of the said charges for "non-filing insurance" as herein alleged.

WHEREFORE, plaintiffs demand judgment against all defendants identified above, namely, Beneficial Corporation, Beneficial Management Corporation of America, Beneficial Florida, Inc., Beneficial Insurance Group, Inc., Beneficial Insurance Agency of Nevada, Wesco Insurance Company, American Centennial Insurance Company and Wilmington Property and Casualty Insurance Company,

pursuant to 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and Rules 64 and 65, Fed.R.Civ.P., for such declaratory judgments to which they may be entitled under the circumstances herein alleged, together with such injunctive and other equitable relief as may be necessary and proper in the circumstances, including as appropriate an accounting, the formation of a constructive trust, disgorgement and an award of costs and expenses.

## - VII. -

## PLAINTIFF CLASS ALLEGATIONS

248. In accordance with the Rules of this Court, plaintiffs will file a separate motion for class certification identifying the specific subdivision or subdivisions of Rule 23(b), Fed.R.Civ.P., under which certification of the class is sought.

249. Plaintiffs seek this Court's order certifying the class in this action as to the declaratory and injunctive relief (including disgorgement or restitution) sought herein, and for the actual and statutory money damages sought pursuant to TILA, and the actual and treble money damages sought pursuant to RICO.

250. Certification of the plaintiff class in this action is proper. The Rule 23(a), Fed.R.Civ.P., requirements are met because:

A. Based upon information provided by the defendants, plaintiffs estimate that the proposed class consists of hundreds of thousands or millions of members throughout the United States. Joinder of all members in these actions is impracticable.

B. There are questions of law or fact common to the class.

C. The claims of the named plaintiffs are typical of those of the class the named plaintiffs represent in that the named plaintiffs and each member of each class were all subjected to the same unlawful and fraudulent treatment by defendants, and each plaintiff suffered the same type harm as suffered by other members of the class.

D. The representative plaintiffs will fairly and adequately protect the interests of the class they represent, and will vigorously pursue the claims on behalf of the class. Plaintiffs and the class are represented by counsel experienced in complex class litigation. Plaintiffs have no interests which are contrary to or in conflict with those of the class they seek to represent.

251. Plaintiffs meet the requirements for class certification under both Rule 23(b)(2) and Rule 23(b)(3).

252. Certification under Rule 23(b)(2) is proper because the defendants' pattern and practice of charging loan and sales finance customers for "non-filing insurance" under the circumstances alleged in the complaint is continuing and ongoing and, without the injunction, declaratory judgment, and other equitable and legal judgments and orders of this Court, will continue into the future, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

253. Certification under Rule 23(b)(3) is proper because:

A. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members;

B. A class action is superior to other available methods for the fair and efficient adjudication of the controversy in each of the above-styled actions;

C. There are not likely to be any significant management difficulties encountered in this case.

WHEREFORE, premises considered, plaintiffs pray the Court will certify this action as a class action, and enter such orders as appropriate for the maintenance of this action as a class action.

THOMAS S. HEIDKAMP

**LEASURE & HEIDKAMP**
Post Office Box 61169
Fort Myers, Florida 33906
Telephone (941) 275-7797
Facsimile (941) 275-6856
Fla. Bar No. 914118

for
LANNY S. VINES

for
MICHAEL L. ALLSUP

**EMOND & VINES**
2200 SouthTrust Tower
420 North Twentieth Street
Post Office Box 10008
Birmingham, Alabama 35202-0008
Telephone (205) 324-4000
Facsimile (205) 324-5020

**JURY DEMAND**

Plaintiffs demand trial by jury of all issues in this cause properly triable thereby.

*One of Plaintiffs' Counsel*

welc...e to Beneficial®

AR BORROWER: Please read this form and ask us any questions you may have. We are using the words I, you and your to mean all persons signing the Loan reement as a Borrower. The words we, us and our refer to Beneficial Florida Inc., the Creditor.

## Disclosure of Credit Costs

Itemization of the AMOUNT FINANCED of $ 1954.55

$ 1568.24 Amount Given to you directly by us (Check to you)

$ 0.00 Amount paid on your account (Net Balance-Prior Account)

$ 386.31 Amount paid to others on your behalf (Sum of Items A through E below)

A. Schedule A Subtotal (See Page 2) $ 69.95

B. Life Insurance Cost paid to insurance company $ 43.74

C. Disability Insurance Cost paid to insurance company $ 92.15

D. Personal Property Insurance Premium paid to insurance company $ 131.22

E. Schedule B Total (See Page 2) $ 49.25

Creditor:

BENEFICIAL FLORIDA INC.
3545 FOWLER ST
FORT MYERS FL 33901

Phone Number: (813)939-5888

Account Number: 42120266

↓ Your Name and Mailing Address ↓ ↓ Residence Address if not the same ↓

CHRIST JR.,KENNETH R
3805 SE 11TH AVE APT 1
CAPE CORAL,FL,33904

| Date of Loan | 1st Due Date | Final Due Date | Monthly Instal. | Other Instals. | To be paid in | |
|---|---|---|---|---|---|---|
| 09/21/94 | 10/21/94 | 09/21/97 | $81.00 | $81.00 | 36 Monthly Instals. | All Monthly Instalments are due on the same day of the month as the 1st Due Date. |

AMOUNT FINANCED: The amount of credit provided to you or on your behalf.
$1954.55

FINANCE CHARGE: The amount the credit will cost you, if you pay as scheduled.
$961.45

TOTAL OF PAYMENTS: The amount you will pay, if you pay as scheduled.
$2916.00

ANNUAL PERCENTAGE RATE: The cost of your credit as a yearly rate.
28.14 %

Credit Insurance: Credit life and credit disability insurance are not required to obtain credit. Insurance will not be provided unless you agree to pay the additional cost by signing below.

### CREDIT INSURANCE

| Type | Cost | Signature | |
|---|---|---|---|
| Life ☒ Single ☐ Joint | $ 43.74 | ☐ I want Single Life Insurance<br>☒ I want Single Life and Single Disability Insurance<br>☐ I want Joint Life Insurance<br>☐ I want Joint Life and Single Disability Insurance | ☐ I do not want Life Insurance<br>☐ I do not want Disability Insurance |
| Disability | $ 92.15 | | |
| Joint Life | See Cost Above Alongside Life | ☐ I want Joint Life Insurance | |

By signing below, I confirm the boxes checked are correct.

[signature]
First Borrower's Signature

Second Borrower's Signature (if applicable)

Property Insurance: You may obtain property insurance from anyone you want. If you obtain the insurance through us, you will pay the Personal Property Insurance premium of $ 131.22.

Prepayment: If you pay off early, you will not have to pay a penalty.

Security: Your loan is ☐ unsecured ☒ secured. If secured, you are giving us a security interest in:
☒ Motor Vehicle ☒ Certain Household Items
☐ Property purchased with proceeds of this loan (describe): ______

Your itemization of the Amount Financed is shown above.
See your Loan Agreement for any additional information about nonpayment, default and any required repayment in full before the scheduled date.



APPENDIX 1

ne of Borrower: CHRIST JR.,KENNETH R Date of Loan: 09/21/94 unt No.: 42120238

## Supplement — Itemization of Amount Financed

| CHEDULE A | | SCHEDULE B PERSONAL PROPERTY FEES | |
|---|---|---|---|
| o: CUSTOMER | $ 69.95 | Documentary Excise Fee | $ 7.00 |
| o: | $ | Motor Vehicle Certificate of Title Fee | $ 28.25 |
| o: | $ | Non-Filing Insurance Premium | $ 14.00 |
| o: | $ | Financing Statement Fee | $ 0.00 |
| o: | $ | Termination Statement Fee (present) | $ 0.00 |
| o: | $ | Other (Specify): | $ N/A |
| ermination Statement Fee (future) | $ 0.00 | | |
| Schedule A Subtotal | $ 69.95 | | |
| heck To You | $ 1568.24 | | |
| Schedule A Total | $ 1638.19 | Schedule B Total | $ 49.25 |

## LOAN AGREEMENT

$ 1954.55 Amount Financed — 28.14 % per year — Rate of Charge

ROMISE TO PAY: You promise to pay us the Amount Financed shown above plus interest. You will pay a Monthly Instalment on the 1st Due Date id on the same day of every month through the Final Due Date.

ITEREST: Interest is figured at the time of each payment on the then unpaid balance of the Amount Financed at the Rate of Charge shown above, hich is equal to the single annual rate equivalent of the graduated rate shown on Page 3 of this Agreement. The Rate of Charge is the same as e annual percentage rate defined under Section 516.031(2) of the Consumer Finance Act (CFA), Chapter 516, Florida Statutes.

ROPERTY INSURANCE: You will keep the property securing this loan insured against loss by fire, or other risks and name us as a loss payee. If s property includes a motor vehicle, you will insure the motor vehicle against loss by collision.

TTORNEY'S FEES AND COURT COSTS: If we bring suit on this Loan Agreement, we may collect from you 3 items: (a) actual and reasonable court osts fixed by the court, (b) actual and commercially reasonable expenses for retaking, storing and selling the property and (c) actual and reasonable ttorney's fees fixed by the court.

'EE FOR CHECK RETURNED UNPAID: If you give us a check that is returned unpaid, you will pay a $10.00 fee or the actual fee charged by the nancial institution returning the check, whichever is greater. You agree that we may deduct this fee from your Monthly Instalment.

NTEREST AFTER FINAL DUE DATE: If you do not pay the loan in full on the Final Due Date, you will pay interest at the Rate of Charge until 12 months fter the Final Due Date. After 12 months from the Final Due Date, you will pay interest at the rate of 18% per year until payment in full.

DEFAULT: If you fail to make any payment when due, we can demand immediate payment of the entire amount you owe.

SECURITY: To secure this loan, you are giving us a security interest in the property (if any) shown in the Security section of the Disclosure of Credit Costs section on Page 1. The property is described in more detail in the Identification of Security form, which is part of this Loan Agreement.

APPLICABLE LAW: This loan is made under the Chapter 516 of the CFA.

CONTINUATION OF PURCHASE MONEY SECURITY INTEREST ☐ (Check box if applicable): This loan represents a conversion of your Account No.______________, and the sums originally advanced thereunder constitute a part of this loan. You agree that the purchase money security nterest in the goods purchased using the above identified Account shall survive this conversion and remain enforceable by us.

Account Number 4212028[illegible] Name KENNETH R C [illegible]IST JR

Date 9/21/94 Address 3805 SE 11TH AVE APT 1 (Street Address)

CAPE CORAL (City) FL (State) 33904 (Zip)

**DEFINITIONS:** In this form the words you and your refer to all persons signing the Loan Agreement as a borrower. The words we, us and our refer to the Creditor shown on the Loan Agreement.

**PROPERTY PROTECTION THROUGH CREDITOR:** We will not require you to obtain property insurance protection through us on any loan we make to you. Any property insurance purchased through us will be written by ☐ American Centennial Insurance Company (ACIC) or ☐ Wesco Insurance Company (Wesco). One of our employees is an agent of ACIC or Wesco, and that employee is not acting as agent, broker or fiduciary for you on this transaction. The agent of ACIC or Wesco, us or an affiliate may realize some benefit from the sale of property insurance.

## PERSONAL PROPERTY PROTECTION

**PERSONAL PROPERTY:** You have offered personal property as security for your loan. We have only accepted part of the offered personal property as security and want this property insured against fire and other hazards. You may purchase this protection through us or from any agent or broker. The amount of protection will be equal to the lesser of the replacement value of the insured personal property or the Total of Payments shown on the Disclosure of Credit Costs, up to a maximum of $25,000.

**APPLICATION FOR PROTECTION:** We have asked if you have adequate protection on the personal property. Your reply is as follows:

INITIAL APPROPRIATE BOX

[KRC] You have no protection and wish to buy the protection offered through us.

[ ] You have protection on the property securing the loan or intend to buy it through an agent or broker of your choice. Your insurance company will name us as mortgagee to receive a portion of claim proceeds. Until we receive notice naming us mortgagee, you agree to buy the protection offered through us. We agree to return the full premium if we receive that notice within 30 days.

[ ] You have protection on the property securing the loan and we have received notice naming us mortgagee.

You are buying personal property protection offered through us, as shown below, and authorize us to pay the premium from the amount of credit extended.

INITIAL BOX IF PROTECTION ELECTED

[KRC] Pays the repair cost or full replacement value of the insured property up to amount of protection elected with no adjustment for wear and tear. You are protected against loss or damage due to fire, lightning, flood, certain other perils and, at a $25 deductible, burglary and robbery extended coverage (including windstorm and hail).

| PREMIUM | AMOUNT OF PROTECTION (Maximum $25,000) | TERM (months) (Maximum Term [illegible]) |
|---|---|---|
| $ 131.22 | $ 2916.00 | 36 |

[signature]
Applicant for Protection

## OPTIONAL REAL PROPERTY PROTECTION

**REAL ESTATE LOAN INSURANCE (RELI):** The RELI benefit assists you, if the home securing your loan becomes temporarily unfit as a residence for more than 2 days, by paying us 1/30th of your equal monthly installment for each day it is unfit during the first month. After the first month the monthly benefit paid us is your equal monthly installment even if the home remains unfit for only part of a month. Your benefit is based on your equal monthly installment even if your final installment is more than your equal monthly installment. You will be protected for the number of months you elect up to the term of your loan. Unless the home becomes permanently unfit as a residence you must begin to repair or reconstruct it within 90 days for benefits to continue. If the home becomes permanently unfit as a residence the insurance company will pay us the amount to pay off your loan on the date the home became permanently unfit.

**ELECTION:**

INITIAL BOX IF ELECTED

[ ] You are buying the RELI protection offered through us and authorize us to pay the premium from the amount of credit extended.

| PREMIUM | AMOUNT OF PROTECTION | TERM (months) |
|---|---|---|
| $ ______ | $ ______ | ______ |

BOR 10 FL ED. 11/91

OFFICE COPY

(Valuation of Personal Property)

Account Number 42120286 Name Kenneth R. C[illegible] JR

Date 9/21/94 Address 3805 SE 11th AVE 107 [illegible]
(Street Address)

Cape Coral FL 33904
City State Zip

DEFINITIONS: The words "you" and "your" refer to borrowers and co-owners of property securing the loan.

AGREEMENT: You have signed an Agreement on the date shown above. This form is incorporated by reference into the Agreement. You are listing below an individual itemization of the personal property ("property") that secures your loan. For insurance purposes only, you are also asked to provide your estimate of the replacement value of all of your household goods, furnishings and appliances. Replacement value means the cost of new, substitute property of the same kind and quality.

## TITLED VEHICLES AND PROPERTY

**Automobile**

Make ____ Serial No. ____
Year ____ Body Type ____ Color ____
Title Certif. No. ____ License Plate No. ____

**Other Vehicle***

Make ____ Serial No. ____
Year ____ Body Type ____ Color ____
Title Certif. No. ____ License Plate No. ____

*[illegible]

**Mobile or Manufactured Home**

Manufacturer/Year Manufactured ____ [illegible] Number ____
Serial No. ____ Title/Registration No. ____
Federal Label No. ____ Dimensions ____

**Boat, Motor and Trailer**

Manufacturer/Year Manufactured ____ Model ____ Length ____
Serial No. ____ Title/Registration No. ____
[illegible] Motor H.P. ____ Serial No. ____

## CERTAIN HOUSEHOLD ITEMS (including non-titled equipment)

| Section | Item | Make or Color | Replace Value |
|---|---|---|---|
| AUDIO/RADIO EQUIPMENT | [illegible] | G.E. | $ 50.00 |
| AUDIO/RADIO EQUIPMENT | Turntable/Compact Disc | Fisher | 200.00 |
| AUDIO/RADIO EQUIPMENT | [illegible] | Albums | 300.00 |
| AUDIO/RADIO EQUIPMENT | T.V. | [illegible] | 400.00 |
| JEWELRY (not wedding rings) | 1 gold necklace | | $ 100.00 |
| JEWELRY (not wedding rings) | 2 gold [illegible] | | 236.00 |
| LAWN & GARDEN EQUIPMENT | | | $ |
| HUNTING EQUIPMENT | | | $ |
| SPORTS/EXERCISE EQUIPMENT | Weights | [illegible] weight | $ 40.00 |
| CAMPING EQUIPMENT | Sleeping Bags | 2 | $ 100.00 |
| MISC. RECREATIONAL EQUIPMENT | Bicycle | 1 Schwinn | $ 200.00 |
| HOBBY EQUIPMENT | | | $ |
| MUSICAL INSTRUMENTS | | | $ |
| VIDEO EQUIPMENT | Video Cassette Recorder | [illegible] | $ 400.00 |
| PERSONAL COMPUTER EQUIPMENT | | | $ |
| UNIQUE ITEMS | [illegible] | | $ 500.00 |
| PHOTOGRAPHIC EQUIPMENT | Camera | 1 Kodak | $ 40.00 |
| HOME WORKSHOP TOOLS/EQUIPMENT | | | $ |
| ANTIQUES/WORKS OF ART | [illegible] | | $ 500.00 |

TOTAL REPLACEMENT VALUE OF CERTAIN HOUSEHOLD ITEMS ........................ $ 3030.00

- TOTAL REPLACEMENT VALUE OF ALL PERSONAL PROPERTY (Including Household Goods, Furnishings, Appliances, etc.): You estimate the total replacement value of your personal property (excluding titled vehicles) is $________
BORROWER'S HANDWRITING
- PURCHASE MONEY SECURITY INTEREST. The following property was purchased for personal, family or household use with the proceeds of your loan: ________
- PRIOR PURCHASE MONEY SECURITY INTEREST: The following property is property in which the creditor previously had a purchase money security interest: ________

[signature]
Insured Borrower

BOR 19 Ed. 11/89

BORROWER COPY

me of Borrower: CHRIST JR,KENNETH R Date of Loan: 08/21/94 ount No.: 42120285

## CREDIT INSURANCE ACKNOWLEDGEMENT
**Pursuant to Section 627.679(1)(c), Florida Statutes**

o Borrower, by signing alongside each of the below listed paragraphs acknowledges as follows:

The Borrower understands that he or she has the option of assigning any other policy or policies the Borrower owns or may procure for the purpose of covering the loan and that the policy need not be purchased from the creditor agent in order to obtain the loan.

Kenneth R. Christ Jr
Borrower

The Borrower understands that although in some insurance policies the credit life coverage may be deferred if, at the time of application, the Borrower is unable to engage in employment or unable to perform normal activities of a person of like age and sex, the proposed credit life insurance policy does not contain this restriction.

Kenneth R. Christ Jr
Borrower

The Borrower understands that although some insurance policies provide the benefits under the policy will terminate when the Borrower reaches a certain age the proposed credit life insurance policy does not contain this provision. Nevertheless, the Borrower's age has been accurately represented to the creditor.

Kenneth R. Christ Jr
Borrower

**'PLICABLE LAW AND PROVISIONS:** Set forth below is a portion of Section 516.031 of the Consumer Finance Act reading as follows:

**Section 516.031**
(1) INTEREST RATES — The licensee may charge, contract for, and receive thereon, interest charges as provided and authorized by this section. .e maximum interest rate shall be 30 percent per annum computed on the first $1,000 of the principal amount as computed from time to time, 24 rcent per annum on that part of the principal amount as computed from time to time exceeding $1,000 and not exceeding $2,000 and 18 percent r annum on that part of the principal amount as computed from time to time exceeding $2,000 and not exceeding $25,000. The original principal nount as used in this section shall be the same amount as the amount financed as defined by the Federal Truth-In-Lending Act and Regulation Z the Board of Governors of the Federal Reserve System. In determining compliance with the statutory maximum interest and finance charges set th herein, the computation utilized shall be simple interest, and not add-on interest or any other computations. When two or more interest rates e to be applied to the principal amount of a loan, the licensee may charge, contract for, and receive interest at that single annual percentage rate iich if applied according to the actuarial method to each of the scheduled periodic balances of principal would produce at maturity the same total nount of interest as would result from the application of the two or more rates otherwise permitted, based upon the assumption that all payments e made as agreed.

(2) Annual Percentage Rate under Federal Truth-In-Lending Act — The annual percentage rate of finance charge which may be contracted for id received under any loan contract made by a licensee under this chapter may equal but may not exceed the annual percentage rate which must 3 computed and disclosed as required by the Federal Truth-In-Lending Act and Regulation Z of the Board of Governors of the Federal Reserve System. ie maximum annual percentage rate of finance charge which may be contracted for and received is 12 times the maximum monthly rate and the aximum annual rate shall be computed on the basis of one-twelfth of the annual rate for each full month. The department shall by regulation establish .e rate for each day in a fraction of a month when the period for which the charge is computed is more or less than 1 month.

## LOAN AGREEMENT (Cont'd)

**REDIT INFORMATION:** By applying for a loan, you authorize and instruct us to request and receive credit information about you from any credit porting agency or third party and unless you object by calling toll free 1-800-848-3441, 8:00 AM to 8:00 PM, Eastern time, to transfer any credit formation we may have about you to affiliates or their agents for solicitation purposes in order that you may learn about their credit or other offerings.

te: 9/21/94

tness: ______________________ ______________________ (Seal)
Signature of First Borrower

tness: ______________________ ______________________ (Seal)
Signature of Second Borrower (if applicable)

tness: ______________________ ______________________ (Seal)
Signature of Third Borrower (if applicable)

tness: ______________________ ______________________ (Seal)
Signature of Co-Owner of Property Securing this Loan (if applicable)

**TATEMENT OF LOAN:** The combination Disclosure of Credit Costs and Loan Agreement serves as the Statement of Loan required by Section 516.15 ) of the CFA. This loan is made by us as a licensee under the CFA.

## CREDIT PROTECTION INFORMATION

**redit Life and Credit Disability Protection:** The credit life and credit disability protection is written by The Central National Life Insurance Company f Omaha which is affiliated with us. We will not act as agent, broker or fiduciary for you on the loan and we may obtain some benefit from the sale f the credit protection.

**lon-Filing Insurance:** The Chattel Mortgage Non-Filing Insurance Policy for which we collect the Non-Filing Insurance Premium (shown on Page 2) vas issued to us by WESCO Insurance Company, which is affiliated with us.

## NOTICE REGARDING CREDIT LIFE AND CREDIT DISABILITY INSURANCE

you obtain credit life and/or credit disability insurance on this loan, please read your insurance certificate carefully. The insurance certificate contains rovisions which limit when you may receive credit life and credit disability benefits. The credit disability insurance is for total disability.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

IN RE: CONSOLIDATED "NON-FILING )
INSURANCE" FEE LITIGATION ) MDL Docket No. 1130

**AFFIDAVIT OF KENNETH R. CHRIST, JR.**

STATE OF FLORIDA )
)
Lee COUNTY )

BEFORE ME, the undersigned Notary Public for the State of Florida-at-Large, personally appeared **KENNETH R. CHRIST, JR.**, who is known to me and who, being by me first duly sworn, deposes and says as follows:

My name is Kenneth R. Christ, Jr., and I reside at 3505 S.E. 11th Avenue, Apartment # 1, Cape Coral, Florida. I am over the age of nineteen years. This affidavit is made on my personal knowledge.

I am one of the named plaintiffs in the above-styled cause. I agree and desire to be approved by the Court as a class representative for the class described in the complaint in this action, and will fully and adequately represent said class to the best of my ability.

On September 21, 1994, I entered into a loan agreement with **BENEFICIAL FLORIDA, INC.** ("Beneficial"), 545 Fowler Street, Ft. Myers, Florida. A copy of this contract is attached hereto as Exhibit "A."

On this loan agreement, I was charged a fee for "non-filing insurance," as shown on Exhibit A. The fee for "non-filing insurance" was included in the "amount financed" portion of the

contract.

Shortly after the execution of this agreement, I received in the United States mail a payment book from Beneficial that contains coupons showing the amounts due each month on the loan agreement. A portion of the amount shown as due on each month's payment coupon includes a fee for "non-filing insurance."

In reliance on and in response to the payment coupons contained in the payment book, I made the payments requested, a portion of which includes a fee for "non-filing insurance."

During the term of the loan, I received in the United States mail several late notices from Beneficial for payments due under the loan agreement.

Further, affiant saith not.

This 23 day of December, 1997.

AFFIANT

SWORN TO and SUBSCRIBED BEFORE ME
this 23 day of December, 1997.

NOTARY PUBLIC

My Commission Expires: June 30, 2000

welcome to Beneficial®

DEAR BORROWER: Please read this form and ask us any questions you may have. We are using the words I, you and your to mean all persons signing the Loan Agreement as a Borrower. The words we, us and our refer to Beneficial Florida Inc., the Creditor.

# Disclosure of Credit Costs

Creditor:

BENEFICIAL FLORIDA INC.
3545 FOWLER ST
FORT MYERS FL 33901

Phone Number: (813)939-5888

Account Number: 42120286

Itemization of the AMOUNT FINANCED of $ 1954.55

$ 1568.24 Amount Given to you directly by us (Check to you)
$ 0.00 Amount paid on your account (Net Balance-Prior Account)
$ 386.31 Amount paid to others on your behalf (Sum of Items A through E below)

A. Schedule A Subtotal (See Page 2) $ 69.95
B. Life Insurance Cost paid to insurance company $ 43.74
C. Disability Insurance Cost paid to insurance company $ 92.15
D. Personal Property Insurance Premium paid to insurance company $ 131.22
E. Schedule B Total (See Page 2) $ 49.25

↓ Your Name and Mailing Address ↓ ↓ Residence Address if not the same ↓

CHRIST JR.,KENNETH R
3805 SE 11TH AVE APT 1
CAPE CORAL FL 33904

| Date of Loan | 1st Due Date | Final Due Date | Monthly Instal. | Other Instals. | To be paid in | All Monthly Instalments are due on the same day of the month as the 1st Due Date. |
|---|---|---|---|---|---|---|
| 09/21/94 | 10/21/94 | 09/21/97 | $81.00 | $81.00 | 36 Monthly Instals. | |

AMOUNT FINANCED: The amount of credit provided to you or on your behalf. $1954.55

FINANCE CHARGE: The amount the credit will cost you, if you pay as scheduled. $961.45

TOTAL OF PAYMENTS: The amount you will pay, if you pay as scheduled. $2916.00

ANNUAL PERCENTAGE RATE: The cost of your credit as a yearly rate. 28.14 %

Credit Insurance: Credit life and credit disability insurance are not required to obtain credit. Insurance will not be provided unless you agree to pay the additional cost by signing below.

## CREDIT INSURANCE

| Type | Cost | | Signature |
|---|---|---|---|
| Life ☒ Single ☐ Joint | $ 43.74 | ☐ I want Single Life Insurance<br>☒ I want Single Life and Single Disability Insurance<br>☐ I want Joint Life Insurance<br>☐ I want Joint Life and Single Disability Insurance | ☐ I do not want Life Insurance<br>☐ I do not want Disability Insurance |
| Disability | $ 92.15 | | |
| Joint Life | See Cost Above Alongside Life | ☐ I want Joint Life Insurance | |

By signing below, I confirm the boxes checked are correct.

Kenneth R. Christ [signature]
First Borrower's Signature

Second Borrower's Signature (if applicable)

Property Insurance: You may obtain property insurance from anyone you want. If you obtain the insurance through us, you will pay the Personal Property Insurance premium of $ 131.22.

Prepayment: If you pay off early, you will not have to pay a penalty.

Security: Your loan is ☐ unsecured ☒ secured. If secured, you are giving us a security interest in:
☒ Motor Vehicle ☒ Certain Household Items
☐ Property purchased with proceeds of this loan (describe):

Your Itemization of the Amount Financed is shown above.

See your Loan Agreement for any additional information about nonpayment, default and any required repayment in full before the scheduled date.



"EXHIBIT A"

Name of Borrower: CHRIST JR., KENNETH R  Date of Loan: 09/21/94  Account No.: 42120286

## Supplement — Itemization of Amount Financed

**SCHEDULE A**

| | |
|---|---|
| To: CUSTOMER | $ 69.95 |
| To: | $ |
| To: | $ |
| To: | $ |
| To: | $ |
| To: | $ |
| Termination Statement Fee (future) | $ 0.00 |
| Schedule A Subtotal | $ 69.95 |
| Check To You | $ 1568.24 |
| Schedule A Total | $ 1638.19 |

**SCHEDULE B**

PERSONAL PROPERTY FEES

| | |
|---|---|
| Documentary Excise Fee | $ 7.00 |
| Motor Vehicle Certificate of Title Fee | $ 28.25 |
| Non-Filing Insurance Premium | $ 14.00 |
| Financing Statement Fee | $ 0.00 |
| Termination Statement Fee (present) | $ 0.00 |
| Other (Specify): | $ N/A |
| Schedule B Total | $ 49.25 |

## LOAN AGREEMENT

$ 1954.55 Amount Financed    28.14 % per year — Rate of Charge

**PROMISE TO PAY:** You promise to pay us the Amount Financed shown above plus interest. You will pay a Monthly Instalment on the 1st Due Date and on the same day of every month through the Final Due Date.

**INTEREST:** Interest is figured at the time of each payment on the then unpaid balance of the Amount Financed at the Rate of Charge shown above, which is equal to the single annual rate equivalent of the graduated rate shown on Page 3 of this Agreement. The Rate of Charge is the same as the annual percentage rate defined under Section 516.031(2) of the Consumer Finance Act (CFA), Chapter 516, Florida Statutes.

**PROPERTY INSURANCE:** You will keep the property securing this loan insured against loss by fire, or other risks and name us as a loss payee. If the property includes a motor vehicle, you will insure the motor vehicle against loss by collision.

**ATTORNEY'S FEES AND COURT COSTS:** If we bring suit on this Loan Agreement, we may collect from you 3 items: (a) actual and reasonable court costs fixed by the court, (b) actual and commercially reasonable expenses for retaking, storing and selling the property and (c) actual and reasonable attorney's fees fixed by the court.

**FEE FOR CHECK RETURNED UNPAID:** If you give us a check that is returned unpaid, you will pay a $10.00 fee or the actual fee charged by the financial institution returning the check, whichever is greater. You agree that we may deduct this fee from your Monthly Instalment.

**INTEREST AFTER FINAL DUE DATE:** If you do not pay the loan in full on the Final Due Date, you will pay interest at the Rate of Charge until 12 months after the Final Due Date. After 12 months from the Final Due Date, you will pay interest at the rate of 18% per year until payment in full.

**DEFAULT:** If you fail to make any payment when due, we can demand immediate payment of the entire amount you owe.

**SECURITY:** To secure this loan, you are giving us a security interest in the property (if any) shown in the Security section of the Disclosure of Credit Costs section on Page 1. The property is described in more detail in the Identification of Security form, which is part of this Loan Agreement.

**APPLICABLE LAW:** This loan is made under the Chapter 516 of the CFA.

**CONTINUATION OF PURCHASE MONEY SECURITY INTEREST** ☐ (Check box if applicable): This loan represents a conversion of your Account No.______________, and the sums originally advanced thereunder constitute a part of this loan. You agree that the purchase money security interest in the goods purchased using the above identified Account shall survive this conversion and remain enforceable by us.

[illegible]

DEFINITIONS: [illegible]

AGREEMENT: [illegible]

[illegible]

CERTAIN HOUSEHOLD ITEMS [illegible]

[illegible]

TOTAL MARKET VALUE OF CERTAIN HOUSEHOLD ITEMS [illegible]

TOTAL REPLACEMENT VALUE OF CERTAIN HOUSEHOLD ITEMS [illegible]

- TOTAL REPLACEMENT VALUE OF ALL PERSONAL PROPERTY [illegible]
- PURCHASE MONEY SECURITY INTEREST: [illegible]
- [illegible] PURCHASE MONEY SECURITY INTEREST [illegible]
- PRIOR PURCHASE MONEY SECURITY INTEREST: [illegible]

Borrower

BORROWER'S COPY